**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| MRI SCAN CENTER, LLC f/k/a <br> MRI SCAN CENTER INC., individually, <br> and on behalf of all others similarly situated <br><br> *Plaintiff,* <br><br> - against - <br><br> NATIONAL IMAGING ASSOCIATES , <br> INC.; MEDSOLUTIONS, INC.; CIGNA <br> CORPORATION and CONNECTICUT <br> GENERAL LIFE INSURANCE <br> COMPANY, <br><br> *Defendants.* | : Case No. <br> : <br> : <br> : <br> : <br> : <br> : <br> : **CLASS ACTION COMPLAINT** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

Plaintiff MRI Scan Center, LLC ("MSC"), brings this Class Action Complaint (the "Complaint") against Defendants National Imaging Associates, Inc. ("NIA"), MedSolutions, Inc. ("MedSolutions"), CIGNA Corporation and Connecticut General Life Insurance Company ("CGLIC"). CIGNA Corporation and CGLIC are collectively referred to herein as "CIGNA," unless otherwise indicated.  Plaintiff hereby alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through its attorneys, as follows:

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

1.     Defendant CIGNA offers, underwrites, and administers commercial health plans ("Plan" or "Plans"), through which it reimburses healthcare expenses incurred by Plan participants and beneficiaries for services and/or products covered by the Plans ("Covered Services"), subject to the Plan's terms, conditions, and limitations.

2.     MSC provides CIGNA Insureds with imaging services, which it then bills to CIGNA. CIGNA, however, entered into contractual relationships with Defendants NIA and MedSolutions pursuant to which those Defendants administer claims for imaging services. CIGNA required MSC to enter into participating provider agreements with NIA and MedSolutions, and required MSC to submit its claims for imaging services through those entities.

3.     CIGNA pays NIA and MedSolutions administrative fees for overseeing and processing these claims. However, in the Explanations of Benefits ("EOB") that ERISA requires insurers to provide to plan participants and beneficiaries, Defendants mischaracterized the nature of NIA's and MedSolution's role. CIGNA misrepresents the amounts their providers, including MSC, billed and been paid for health care services.  By altering these amounts, CIGNA mischaracterizes the administrative fees CIGNA pays to NIA and MedSolutions as medical costs. CIGNA does so in order to report an  inaccurate Medical Loss Ratio ("MLR") to state insurance regulators and others.  Moreover, overstating the reported medical costs can also inflate the patient responsibility for payment of claims and/or alter the amounts extracted from subscribers' Health Savings Accounts ("HSAs").

4.     An MLR represents the percentage of premium income that an insurer pays out in medical expenses as compared to the portion spent toward administrative costs on behalf of subscribers. Under the Patient Protection and Affordable Care Act ("PPACA"), CIGNA must meet MLR requirements in order to avoid paying subscribers rebates of excessive premiums. Through the actions described herein, CIGNA misapplied the NIA and MedSolutions administrative fees as medical expenses in order to report an inflated MLR.

5.     The vast majority of the CIGNA Insureds on whose behalf MSC submits claims are covered by employee welfare benefit plans issued by or on behalf of private employers and are thereby governed by ERISA.  ERISA governs all such plans, whether they are fully insured or self-funded, and is estimated to include more than 170 million insureds nationwide.  ERISA-exempt plans include those that are issued by governmental agencies or churches, or for plans acquired by individuals, and not through an employer.

6.     Because the benefits paid to MSC pursuant to the claims they submit are based on Defendants' evaluation and assessment of the terms and conditions of ERISA Plans, ERISA governs the adjudication and disposition of these benefit payments.  Further, because Defendants pay Plan benefits directly to MSC as an assignee of claims assigned to it by CIGNA Insureds, MSC is a Plan beneficiary under ERISA, with standing to assert rights and protections under this statute.

7.     Because CIGNA's actions were improper and without a valid legal foundation, Plaintiff seeks, among other things, to enjoin Defendants from engaging in the improper practices described herein.

## THE PLAINTIFF

8.     Plaintiff MSC provides health care services in the areas of Nuclear Medicine and Magnetic Resonance Imaging ("MRI") from its office at 3122 E. Commerce Blvd., Fort Lauderdale, Florida 33308.  MSC's Medical Director is Robert L. Kagan M.D. F.C.A.P.  MSC alleges systemic and repeated violations by Defendants of the Employee Retirement Income Security Act of 1974 ("ERISA") as described more fully herein.

9.     As a matter of course, MSC has its patients execute written assignments in which they agree that MSC may bill and receive payments directly from the patient's insurance, and

that the patient remains responsible for any medical costs insurance does not cover. MSC has executed assignments from each of the specific patients refered to herein. These assignments give MSC standing to pursue ERISA claims on those patients' behalf.

## THE DEFENDANTS

10. NIA is a private company owned by Magellan Health Services, Inc. NIA provides medical cost management services, particularly in the areas of radiology and diagnostic imaging. CIGNA was a client of NIA during the period covered by this Complaint. NIA is headquartered at 55 Nod Road, Avon, Connecticut 06001.

11. MedSolutions is a private company that provides medical cost management services, particularly in the areas of radiology and diagnostic imaging. MedSolutions provides claims administration for imaging services for CIGNA. MedSolutions is headquartered at 730 Cool Springs Blvd, Suite 800, Franklin Tennessee 37067.

12. CIGNA Corporation is incorporated in Delaware. As reported in CIGNA Corporation's 2011 Form 10-K, CIGNA, through its Health Care segment (which it refers to as "CIGNA Healthcare") "offers insured and self-insured medical, dental, behavioral health, vision and prescription drug benefit plans ... in all 50 states, the District of Columbia and the U.S. Virgin Islands." CGLIC is a subsidiary of CIGNA Corporation, licensed to do business in all 50 states, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, Canada and Taiwan. The health insurance plans offered by CIGNA include those which insure the CIGNA Insureds for whom the Plaintiff has provided healthcare services, as detailed herein. CIGNA's principal executive offices are located at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania 19192. It also has corporate headquarters located at 900 Cottage Grove Road, Bloomfield, CT 06002.

13.     "CIGNA" is a brand name used for products and services provided by one or more of the CIGNA group of subsidiaries that offer, underwrite, or administer benefits. When used in this Complaint, "CIGNA" includes all CIGNA subsidiaries owned and controlled by any of the named Defendants whose activities are interrelated and intertwined with them. Due to the manner in which they function, including the discretion they exercise in making coverage determinations with respect to ERISA Plans, all of the Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary standards.

## JURISDICTION AND VENUE

14.     Defendants' actions in administering employer-sponsored healthcare plans, including determining reimbursement for providers who perform healthcare services to CIGNA Insureds pursuant to the terms and conditions of the healthcare plans, are governed by ERISA, 29 U.S.C. §§ 1001–1461. Plaintiff asserts subject matter jurisdiction for their ERISA claims under 28 U.S.C. § 1331 (federal subject matter jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

15.     Venue is appropriate in this District for Plaintiff's claims under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) because: (i) the health care services underlying Plaintiff's claims were rendered in this District, (ii) a substantial part of the acts and omissions by Defendants giving rise to Plaintiff's claims occurred in this District, (iii) Defendants reside, are found, have agents, and transact business in this District, and (iv) Defendants conduct a substantial amount of business in this District and insure or administer group health plans both inside and outside this District, including from offices located in this District.

## DEFENDANTS' ERISA VIOLATIONS

16.     As the company that offers, underwrites, and administers the employee benefit plans by and through which a number of Plaintiff's patients (and CIGNA participants and beneficiaries) received their insurance, CIGNA is subject to ERISA, and its governing

regulations. Further, due to the role CIGNA played in administering the Plans that insured Plaintiff's patients, including making coverage and benefit decisions and deciding appeals, CIGNA was a fiduciary under ERISA.

17. Due to the discretion NIA and MedSolutions exercised in administering claims for benefits owed to CIGNA participants and beneficiaries, those entities were ERISA fiduciaries.

18. Under ERISA, Defendants are required, among other things, to comply with the terms and conditions of the applicable Plans; to accord Insureds (or their Providers through an executed assignment) an opportunity to obtain a "full and fair review" of any denied or reduced reimbursement; and to make appropriate and non-misleading disclosures to Members or their Providers. Such disclosures include: accurately setting forth Plan terms; explaining the specific reasons why a claim is denied or reduced and the internal rules and evidence that underlie such determinations; disclosing the basis for their interpretation of Plan terms; and providing appropriate data and documentation concerning its coverage decisions.

19. In offering and administering its Plans, CIGNA was the "Plan Administrator," as that term is defined under ERISA. CIGNA interpreted and applied the Plan terms, oversaw all coverage decisions (including by delegating such decisions to NIA or MedSolutions), and provided for payment to members and/or their Providers. As the Plan Administrator of ERISA plans, CIGNA was required to provide its participants and beneficiaries with a summary plan description ("SPD"), a document designed to describe in layperson's language the material terms, conditions and limitations of the Plan. The full details of the plan, which are summarized in the SPD, are contained in the Evidence of Coverage ("EOC") that governs each participant's Plan.

20.     With respect to all of the health insurance plans issued by CIGNA ("CIGNA Plans"), Defendants are obligated to CIGNA participants and beneficiaries, and their providers, to provide specific, medically necessary, healthcare benefits and reimbursements. As detailed herein, CIGNA and, pursuant to their contracts to process diagnostic imaging claims, NIA and MedSolutions, breached, and continue to violate, their ERISA obligations to Plaintiff and the Class.

**Manipulating Medical Records and Issuing False Benefit Forms**

21.     CIGNA requires MSC and other providers to submit their claims through third-party administrators like NIA and MedSolutions.  CIGNA also requires that providers enter into participating provider agreements with these third-party administrators.  In most instances, these third-party administrators utilize a fee schedule that provides lower maximum benefit payments ("Allowed Amounts") for any given service than CIGNA's own proprietary fee schedule would otherwise provide.

22.     When submitting claims, providers identify by Current Procedural Terminology ("CPT") Code (a five-digit number used to identify each individual health care service, with or without a modifier representing a two-digit number) the specific services they provided to their patients, along with their usual and customary charge for that service. The third-party administrator is responsible for processing the claim and either paying the provider directly or submitting it to CIGNA for payment.

23.     Once a benefit is determined, CIGNA issues an EOB to the CIGNA Insured which details the service, the billed charge, the amount deemed by Defendants to be covered under the health care plan (referred to as the "Allowed Amount"), any deductible or co-insurance which must be paid by the patient prior to any benefits being paid, and the amount of benefits paid to the provider on behalf of the patient. In addition, the third-party administrator handling

the claim issues a Remittance Advice ("RA") or Explanation of Payment ("EOP") to the provider, detailing the results of its claim processing.

24.     The purpose of the EOB is to provide a complete and accurate summary of how the claim was processed, so that CIGNA Insureds and their providers have a full understanding of the benefit determination made by Defendants. By providing the necessary information, CIGNA Insureds and/or or their providers will have the necessary information to appeal any denials or reductions of benefits, as permitted under ERISA.

25.     In a blatant violation of ERISA, Defendants manipulated and falsified EOBs and other communications to providers and subscribers in order to obscure and/or mischaracterize the administrative fees it paid to NIA and MedSolutions.

26.     As one example, MSC performed an MRI on CIGNA Insured K.D. in 2011. MSC submitted a charge of $1,850.00 to NIA for this service. In accordance with MSC's contract with NIA, NIA discounted MSC's charge to an Allowed Amount of $325.00. This discount was documented on an EOP that NIA sent to MSC. Because K.D. had not yet met her deductible, NIA made no payment on the claim. MSC then billed K.D. for the $325.00 charge.

27.     The EOB CIGNA sent to K.D, however, told a very different story. According to that document, the "amount billed" by MSC was not $1,850.00, but only $473.00. Furthermore, the EOB indicated that this charge was not discounted by CIGNA at all. Instead, the EOB indicated that the Allowed Amount on the claim was not $325.00 as indicated on the EOP sent to MSC, but rather $473.00. The EOB stated that $473.00 was applied to K.D.'s deductible, and was the amount she owed.

28.     Had K.D.'s claim not been taken up by the deductible, MSC would have been paid an allowed amount of $325.00 (minus any applicable co-payments), but $473.00 (minus any

- 8 -

applicable co-payments) would have been paid by CIGNA as "benefits" to NIA. In other words, CIGNA is able to mask administrative fees it is paying to NIA, and recast them as medical expenses paid for the patient's benefit.

29.     Based on MSC's records, K.D.'s claim is typical of claims administered by NIA. CIGNA routinely reports a higher Allowed Amount to the patient than what was actually the allowed charge remitted to MSC.

30.     MSC had similar experiences with claims submitted to MedSolutions. In one instance, MSC submitted a claim for MRI services provided to CIGNA Insured A.G. MSC charged $3850.00 for the scan itself and $150 for injection of diagnostic contrast. MedSolutions sent MSC an EOP detailing that the Allowed Amount for the scan was $450.00 ($100 of which was taken up by the patient's deductible), and the Allowed Amount for the contrast was $47.08 ($30 of which was taken up by the patient's deductible). Thus according to the EOP, MSC was paid $367.08, and the patient was responsible for $130.00.

31.     The EOB provided to A.G by MedSolutions, however, gave a completely different set of numbers. The EOB showed a charge for the scan of $1500.01, not $3850.00. The Allowed Amount and deductible for the scan were nonetheless the same as on the EOP ($450.00 and $100.00, respectively). The contrast, however, was a different story. There the EOP showed a billed amount of $306.00, not $150.00, and an Allowed Amount of $167.09, not $47.08. The $30.00 deductible for the contrast was the same on both the EOP and EOB.

32.     As a result, the EOB showed combined Allowed Amounts of $617.09 rather than the $497.09 reported on the EOP. This discrepancy masks the administrative payment CIGNA made to MedSolutions and makes it appear as though it was paid as medical benefits.

33.     The example described above is typical of the claims processed by MedSolutions.

34. In other instances, MedSolutions took its deception a step further, and actually demanded repayment of benefits to satisfy its administrative fees. Whenever CIGNA, for whatever reason, refuses to pay MedSolutions the inflated Allowed Amount, MedSolutions demands that the difference be paid by MSC. When MSC balked at repaying these amounts, MedSolutions suggested that MSC could, in contravention of its participating provider agreements, bill its patients for the balance.

**The Effect of Defendants' Conduct on Reported Medical Loss Ratios**

35. Based on information and belief, Defendants' scheme is motivated by their effort to falsely increase the medical expense portion of CIGNA's reported MLR by improperly characterizing the administrative fee it pays to third-party administrators as medical reimbursement for services rendered. In doing so, Defendants underpay the providers and overcharge the subscribers. In each example provided herein, Defendants inflated the Allowed Amount reported to patients significantly above what was actually paid to providers. This inflation reflected the amounts CIGNA paid in administrative fees to NIA and MedSolutions. Nothing in CIGNA's Plans disclose or permit this manipulation of claims documentation. Indeed, the scheme requires Defendants to falsify medical records by misstating billed and allowed amounts, and issuing EOBs with inaccurate information. Such conduct is improper and in violation of ERISA, as detailed herein.

36. Section 2718 of the Public Health Service Act ("PHSA"), 42 U.S.C. 300gg-18 as amended by the PPACA, requires that health insurers such as CIGNA report on major categories of how they spend premiums that they receive from subscribers. As part of these requirements, the law sets out MLR requirements, and insurers are required to provide rebates to subscribers when the percentage of premium dollars paid to medical costs is below between 80-85%, depending on the type of plan at issue. In determining the MLR, the insurer may include both the

actual costs spent for medical expenses as well as for those which are designed to improve health

care quality for subscribers.

37.     The Department of Health and Human Services ("HHS") issued an Insurance

Standards Bulletin on July 18, 2011 to provide guidance regarding the calculation of MLR as it

relates to payments made to third-party vendors.  That Bulletin contained the following question

and answer:

> Q.     How should an insurer report amounts paid to third party vendors who pay
> others to provide clinical services to enrollees and who perform network
> development, administrative functions, claims processing, and utilization
> management?
>
> A.     In general, an issuer may only include as reimbursement for clinical
> services (incurred claims) the amount that the vendor actually pays the medical
> provider or supplier for providing covered clinical services or supplies to
> enrollees. Where the third party vendor is performing an administrative function
> such as eligibility and coverage verification, claims processing, utilization review,
> or network development, expenditures and profits on these functions would be
> considered a non-claims administrative expense as provided in 45 CFR
> §158.140(b)(3)(ii).
>
> Some third party vendors provide reimbursement for clinical services to
> enrollees and provide administrative functions such as claims processing and
> network development. Payments by an issuer to a third party vendor to provide
> clinical services directly to enrollees through its own employees are considered to
> be incurred claims. However, the amounts paid by the issuer to a third party
> vendor for the functions that are not direct clinical services to enrollees through
> its own employees are governed by §158.140(b)(3)(ii), and only the amounts the
> third party vendor pays to providers may be included in incurred claims. . . . The
> amounts attributable to network development, administrative fees, claims
> processing, and utilization management by the third party vendor and the third
> party vendor's profits on those activities must not be included by an issuer in its
> incurred claims.
>
> For example, when a pharmacy benefit manager (PBM) pays a retail
> pharmacy one amount for prescription drugs covered by the plan and charges the
> issuer a higher amount (the retail spread), the issuer may only claim the amounts
> paid by the PBM to the retail pharmacy as incurred claims.

38.     NIA and MedSolutions are third-party vendors that fall within the July 18, 2011 Bulletin. As a result, when CIGNA reports its MLR, it is precluded from including the administrative fees paid to NIA and MedSolutions for claims processing and utilization management as part of the medical expenses which would be included in the MLR.

39.     The Department of Labor issued its Interim Final Rule with respect to the MLR rebates on December 2, 2011 (45 CFR Part 158). The Rule specifies that premium rebates are considered to be plan assets under ERISA. Because any party with authority or control over plan assets is an ERISA fiduciary, any action with respect to a rebate under the MLR requirements is a fiduciary action.

40.     Various state laws similarly established minimum MLRs. The California Insurance Code, for example, gives the California Insurance Commissioner explicit authority to withdraw approval of an insurance policy in that state if, "after consideration of all relevant factors, . . . the benefits provided under the policy are unreasonable in light of the premium charged." Cal. Ins. Code § 10293. State regulations specify that one factor in considering whether benefits are reasonable in relation to the premium charged is whether the medical benefits provided under a policy account for at least 70% or more of the premiums collected. Cal. Admin. Code tit. 10, § 2222.12. This calculation is supposed to be based on an analysis of actual loss experience.

41.     By falsifying the records to reduce the reported billed amounts and inflating the reported Allowed Amounts, CIGNA is also able to falsify reports of billed charges which it may provide to governmental or outside agencies which collect information for purposes of reporting usual, customary and reasonable ("UCR") rates. In February 2009, for example, CIGNA entered into an agreement with the New York Attorney General, whereby it agreed, *inter alia*, to pay $10

million toward the creation of "a new, independent database run by a qualified nonprofit organization" for the purpose of reporting UCR rates for health care services—the FAIR database. CIGNA and other insurers contribute their own charge data to FAIR, which is "the sole arbiter and decision-maker with respect to all data contribution protocols and all other methodologies used in connection with the database," and it would "make rate information from the database available to health insurers" for use with health care plans that set out-of-network reimbursement based on UCR. The validity of the new database, however, was dependent upon receiving accurate information as to what providers actually charged in the open market for their services. Yet, by altering the actual charges in its EOBs and other communications, CIGNA falsely billed rates well below the actual charges, therefore allowing it to underreport UCR data.

42. When the New York Attorney General announced its agreement with CIGNA, he was joined by CIGNA officials. A CIGNA representative stated at that time:

> Cigna commends the Attorney General's efforts to bring greater transparency to the pricing of health care services and we are pleased to partner in the creation of an independent not-for-profit organization to administer the new database. We recognize the attorney general's concern that there are inherent conflicts of interest related to the Ingenix database and expect that this new database will further enable people to make informed choices about their health care purchases.

Despite this public representation that CIGNA supported an accurate and "transparent" database to reflect true UCR rates, CIGNA acted to distort such data, to the detriment of health care providers and subscribers.

## CLASS DEFINITIONS

43. Plaintiff brings this action on its own behalf and on behalf of an "ERISA Class," defined as:

> All healthcare providers who, from six years prior to the filing date of this action to its final termination ("ERISA Class Period"), provided healthcare services to patients insured under CIGNA ERISA healthcare plans and who submitted claims to a third-party administrator including MIA and MedSolutions.

- 13 -

44. Plaintiff brings claims against Defendants on its own behalf and on behalf of the ERISA Class to: (1) declare that Defendants' conduct alleged herein is improper and in violation of ERISA; (2) enjoin Defendants from engaging in the improper conduct allegedly herein or otherwise relying on the internal policies challenged in this action; and (3) restitute all demanded repayments by class members of amounts representing CIGNA's administrative fees.

## COMMON CLASS CLAIMS, ISSUES AND DEFENSES FOR THE CLASS

45. The following common class claims, issues and defenses for the Plaintiff and the ERISA Class arise for the defined Class Period:

(1) Whether Defendants violated ERISA by issuing EOBs that misstate the provider's billed and allowed amounts and increase the reported amount that is the financial responsibility of the patient, so as to create a false and misleading report of CIGNA's MLR;

(2) Whether providers have standing to pursue claims under ERISA based on assignments that authorize insurers to pay such providers directly for covered services;

(3) Whether CIGNA's actions with regard to Class Members result in a waiver of any objection to the validity of any assignments that may have been given by CIGNA subscribers, or whether CIGNA is otherwise estopped from asserting such an objection;

(4) What the applicable statute of limitations periods are for the claims of Class members; and

(5) What are the appropriate equitable remedies under ERISA for the alleged violations.

## ADDITIONAL CLASS ACTION ALLEGATIONS

46. The members of the Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes consist of thousands of providers who are subject to Defendants' policies which are the subject of this action. The precise number of members in the Classes is within CIGNA's custody and control. Based on reasonable estimates, the numerosity requirement of Rule 23 is easily satisfied for the Class. Common questions of

law and fact exist as to all Class members and predominate over any questions affecting solely individual members of the Class, including the class action claims, issues and defenses listed above.

47.    The Plaintiff's claims are typical of the claims of the Class members because, as a result of the conduct alleged herein, Defendants have breached their statutory and contractual obligations to the Plaintiff and the Classes through and by uniform patterns or practices as described above.

48.    The Plaintiff will fairly and adequately protect the interests of the members of the Class, is committed to the vigorous prosecution of this action, has retained counsel competent and experienced in class action litigation and in the prosecution of ERISA and other health care claims and has no interests antagonistic to or in conflict with those of the Class. For these reasons, the Plaintiff is adequate class representatives.

49.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Defendants.

50.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable. Further, the expense and burden of individual litigation make it impossible for the Class members individually to redress the harm done to them. Given the uniform policy and practices at issue, there will also be no difficulty in the management of this litigation as a class action.

## CLAIM FOR EQUITABLE RELIEF UNDER ERISA
### (on behalf of Plaintiff and the ERISA Class)

51.    The allegations contained in this Complaint are realleged and incorporated by reference as if fully set forth therein. This Count is brought under 29 U.S.C. § 1132(a)(3).

52.     Under ERISA, Defendants must comply with the terms and conditions of the applicable Plans when processing claims and making benefit determinations.     Further, Defendants must issue valid EOBs and other reports which properly characterize the billed and allowed charges, who the provider is, and the proper amount owed by the subscriber as part of the benefit determination process. Under Section 502(a)(3) of ERISA, § 502(a)(3), Plaintiff may sue for "appropriate equitable relief" arising from Defendants' violations of ERISA when engaged in administering ERISA Plans.

53.     As detailed herein, Defendants violated the Plans which cover the CIGNA Insureds as a result of their falsification of EOBs and other documentation required under ERISA and the regulations promulgated thereunder.   Thus, Plaintiff is entitled to appropriate equitable relief to address these violations under ERISA.

54.     Plaintiff, on its own behalf and on behalf of the members of the Class, seeks declaratory and injunctive relief relating to Defendants' violation of plan terms and ERISA, as detailed herein; and request that Defendants restitute amounts demanded by Defendants and paid by Plaintiff and the Class (including interest) for administrative expenses.   Plaintiff further requests attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendants.

**WHEREFORE**, Plaintiff demands judgment in its favor against Defendants as follows:

A.     Certifying the Class, as set forth in this Complaint, and appointing Plaintiff as Class representatives for the Class.

B.     Declaring that Defendants breached the terms of CIGNA's EOCs and SPDs, awarding restitution to the Plaintiff and the members of the Class, and granting injunctive relief

- 16 -

to prevent Defendants' continuing actions detailed herein that are undisclosed and unauthorized by EOCs and SPDs;

      C.     Awarding Plaintiff disbursements and expenses of this action, including reasonable counsel fees, in amounts to be determined by the Court;

      D.     Awarding interest from the date of payment of restituted amounts; and

      E.     Granting such other and further relief as is just and proper.


Dated:   January 8, 2013

                               Respectfully submitted,

                               Edward H. Zebersky
                               ZEBERSKY PAYNE, LLP
                               110 S.E. 6th Street
                               Fort Lauderdale, Florida 33301
                               954.989.6333
                               954.989.7781 (fax)


                               Jeffrey M. Liggio, Esq.
                               Liggio Benrubi
                               1615 Forum Place, Suite 3-B
                               West Palm Beach, FL  33401
                               561.616.3333
                               561.616.3266 (fax)


                               D. Brian Hufford
                               Robert J. Axelrod
                               Anthony J. Maul
                               POMERANTZ GROSSMAN
                                HUFFORD DAHLSTROM & GROSS LLP
                               600 Third Avenue
                               New York, New York 10016
                               212.661.1100
                               212.661.8665 (fax)

Joe R. Whatley, Jr.
Edith M. Kallas
WHATLEY KALLAS LLC
380 Madison Avenue, 23rd Floor
New York, New York 10017
212.447.7060
212.447.7019 (fax)

*Counsel for Plaintiff*
*and the Putative Class*