## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.  0:13-cv-60051-DIMITROULEAS/SNOW

MRI SCAN CENTER, LLC f/k/a
MRI SCAN CENTER INC., individually, and on
behalf of all others similarly situated,

        Plaintiffs,

    - against -

NATIONAL IMAGING ASSOCIATES,
INC.; MEDSOLUTIONS, INC.; CIGNA
CORPORATION and CONNECTICUT
GENERAL LIFE INSURANCE
COMPANY,

        Defendants.

## CIGNA DEFENDANTS' MOTION TO DISMISS MSC'S CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION.......................................................................................................1

RELEVANT FACTUAL BACKGROUND...................................................................2
    Overview of Cigna-Administered Health Plans ...............................................2
    Cigna's Relationships With NIA and MedSolutions .........................................3
    Cigna's Reporting of its Medical Loss Ratio ..................................................7

ARGUMENT ............................................................................................................8

I.     THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
     MSC LACKS STANDING TO BRING ITS ERISA CLAIMS EITHER ON
     ITS OWN BEHALF OR AS A PURPORTED ASSIGNEE OF ITS
     PATIENTS.......................................................................................................8
     A.    MSC Lacks Standing To Bring Claims On Its Own Behalf. ...................9
     B.    MSC Lacks Standing To Bring Claims As An Assignee Of Its Patients................9
          1.    MSC lacks standing because it has not pled valid assignments, and
              because even a valid assignment would not extend to the relief
              MSC seeks. ...................................................................................10
          2.    Even if MSC had valid assignments, MSC would still lack
              standing because it has not alleged injury to its patients. ..........12
          3.    MSC lacks standing to challenge Cigna's medical loss ratio
              reporting. ......................................................................................13

II.    MSC'S ERISA CLAIMS ARE ALSO SUBJECT TO DISMISSAL UNDER
     12(b)(6) DUE TO A VARIETY OF LEGAL INSUFFICIENCIES.............................14
     A.    MSC Has Not Pled That Its Patients Exhausted Their Administrative
          Remedies....................................................................................................14
     B.    MSC Cannot Seek Restitution Because Cigna Does Not Possess, And
          Never Has Possessed, The Funds That MSC Seeks To Recover...........................16
     C.    MSC Is Not Entitled To Injunctive or Declaratory Relief Concerning
          Cigna's EOBs...........................................................................................18

CONCLUSION ......................................................................................................19

i

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plans*,
  513 F.3d 1223 (11th Cir. 2008)........................................................................ 16, 17

*Am. Med. Ass'n v. United Healthcare Corp.*,
  Civ. No. 00-2800, 2007 WL 1771498 (S.D.N.Y. June 18, 2007)........................... 12

*Amschwand v. Spherion Corp.*,
  505 F.3d 342 (5th Cir. 2007)................................................................................ 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 10, 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 14

*Counts v. Am. Gen. Life & Accident Ins. Co.*,
  111 F.3d 105 (11th Cir. 1997)............................................................................. 15

*CP Motion, Inc. v. Aetna Health, Inc.*,
  Civ. No. 04-23140, 2008 WL 4826093 (S.D. Fla. Nov. 4, 2008)......................... 15

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*,
  647 F.3d 1296 (11th Cir. 2011) ............................................................................ 9

*Gerosa v. Savasta & Co., Inc.*,
  329 F.3d 317 (2d Cir. 2003)................................................................................. 17

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ........................................................................................... 17

*Halaris v. Viacom, Inc.*,
  Civ. No. 06-1646, 2007 WL 4145405 (N.D. Tex. Sept. 21, 2007)......................... 18

*Hall v. Aetna Life Ins. Co.*,
  759, F. Supp. 2d 1321 (N.D. Fla. 2010) .............................................................. 12

*In re Managed Care Litig.*,
  185 F. Supp. 2d 1310 (S.D. Fla. 2002)................................................................. 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ....................................................................................... 9, 13

*Mason v. Cont'l Group, Inc.*,
  763 F.2d 1219 (11th Cir. 1985)............................................................................ 15

### TABLE OF AUTHORITIES (CONT'D)

Page

*McDonald v. S. Farm Bureau Life Ins. Co.*,
   291 F.3d 718 (11th Cir. 2002) ............................................... 14

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ........................................................... 16

*N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*,
   Civ. No. 09-2556, Slip Op. (S.D. Tex. June 25, 2012) ........................... 13

*Owen v. Regence Bluecross Blueshield of Utah*,
   388 F. Supp. 2d 1318 (D. Utah 2005) ..................................... 12

*Perrino v. S. Bell Tel & Tel. Co.*,
   209 F.3d 1309 (11th Cir. 2000) ............................................. 15

*Raines v. Byrd*,
   521 U.S. 811 (1997) .......................................................... 8

*Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*,
   Civ. No. 11-80800, 2012 WL 28263 (S.D. Fla. Jan. 5, 2012) ................. 15

*Sanctuary Surgical Ctr., Inc. v. UnitedHealthcare, Inc.*,
   Civ. No. 10-81589, 2011 WL 6935289 (S.D. Fla. Dec. 30, 2011) ..................... 10, 11

*Sanctuary Surgical Ctr., Inc.*, *v. UnitedHealth Group, Inc.*,
   Civ. No. 10-81589, 2013 WL 149356 (S.D. Fla. Jan. 14, 2013) ................. 11

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
   547 U.S. 356 (2006) .......................................................... 16

*Stephens v. Citation Corp.*,
   705 F. Supp. 2d 1291 (N.D. Ala. 2010) .................................. 17

*Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*,
   Civ. No. 04-1253, 2006 WL 3469544 (D. Kan. Nov. 30, 2006) ........................ 10, 11

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
   529 U.S. 765 (2000) ............................................. 8, 9, 12, 13

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ......................................................... 13

*Williams v. Blue Cross & Blue Shield of Fla.*,
   Civ. No. 09-225, 2010 WL 4025857 (N.D. Fla. Oct. 12, 2010) .............................. 12

**Statutes**

29 U.S.C. § 1132(a)(3) .......................................................... 10, 11, 16, 17

## TABLE OF AUTHORITIES (CONT'D)

Page

42 U.S.C. § 300gg-18 ................................................................................................ 7, 14

Patient Protection And Affordable Care Act, Pub. L. 111-148, 124 Stat. 119 (2010). ......... passim

**Regulations**

45 C.F.R. § 158.101 ................................................................................................ 14

45 C.F.R. § 158.102 ................................................................................................ 8

45 C.F.R. § 158.110-70 ............................................................................................ 7

45 C.F.R. § 158.210 ................................................................................................ 8

45 C.F.R. § 158.211 ................................................................................................ 8

**Constitutional Provisions**

U.S. Const. Article III ........................................................................................ 8, 9, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2, 14

## INTRODUCTION

Although Plaintiff MRI Scan Center ("MSC") received exactly that to which it is entitled pursuant to its participating provider contracts with National Imaging Associates, Inc. ("NIA") and MedSolutions, Inc., MSC now alleges that Cigna's longstanding business relationships with NIA and MedSolutions somehow violate ERISA.[1]  MSC points to recently enacted requirements under the Patient Protection and Affordable Care Act ("PPACA") as the supposed motivation for Cigna's alleged ERISA violations.  But MSC cannot explain how regulations implemented in 2012 could be a motive for business practices that MSC claims date back to 2007.  MSC's fanciful allegations are no panacea for the two fatal defects in MSC's Complaint.

First, this Court lacks subject matter jurisdiction to entertain this dispute because MSC lacks standing to assert claims either on its own behalf or on behalf of its patients.  Importantly, MSC does not and cannot allege that it has been injured in any way by the parties' performance of the contractual relationships into which MSC voluntarily entered.  And MSC's attempt to plead around this hole by asserting its ERISA claims as a purported "assignee" of its patients also fails.  MSC's vague allegation that its patients assigned MSC the right to direct payment is insufficient for this Court to determine standing, and in any case, would not convey the right to pursue the claims asserted here—namely, objections to the contents of Cigna's explanation of benefits ("EOB") forms that are sent to beneficiaries in Cigna-administered plans and challenges to Cigna's calculations of coinsurance and other patient cost-sharing responsibilities.  Moreover, MSC has standing to sue as an assignee only to the extent that its patients would have standing, but MSC has failed to allege that its patients were injured in any way by Cigna's relationships

---

[1]    Following the Complaint's terminology, "Cigna" refers to defendants Connecticut General Life Insurance Co. and Cigna Corp., collectively.  Cigna Corp. is a holding company that is not engaged in the business of insuring or providing administrative services to healthcare benefits plans and has been misnamed as a party.  This motion does not address the fact that these entities are not a single entity because, even if they were, MSC's Complaint still fails to state a claim for which relief can be granted.

with NIA and MedSolutions.  To the contrary, the patient examples discussed in MSC's Complaint demonstrate that MSC's patients directly benefited from Cigna's relationships with NIA and MedSolutions.  Finally, MSC lacks standing to raise any issue concerning Cigna's obligations under the PPACA because MSC has not alleged any violations of this statute and because neither the PPACA nor its implementing regulations allow for a private right of action.

Second, independent from MSC's lack of standing, MSC's ERISA claims are subject to dismissal under Rule 12(b)(6) because they suffer from a panoply of other legal defects. Specifically, MSC has not pled that its patients have exhausted their administrative remedies, a prerequisite for an ERISA claim.  Nor has MSC pled that Cigna actually possesses the money that MSC asserts its patients are owed, a requirement for MSC to recover money on its equitable ERISA claims.  Finally, MSC has not demonstrated that it is entitled to declaratory or injunctive relief because the facts it alleges do not constitute a violation of ERISA.

Given the deficiencies in MSC's factual allegations and legal claims, this Court should dismiss MSC's Complaint in its entirety.

**RELEVANT FACTUAL BACKGROUND**

**Overview of Cigna-Administered Health Plans**

Cigna administers healthcare benefits plans for its clients, the vast majority of which are employers who provide health benefits to their employees through self-funded plans.  (Compl. ¶¶ 5, 16.)  As part of Cigna's role in administering healthcare plans, Cigna enters into contracts with healthcare providers to create an easily accessible and affordable network.  (*Id.* ¶¶ 2, 21.) Joining Cigna's network benefits providers as they gain a source of new patients and their claims are processed more efficiently.  Cigna's network also benefits individuals covered by Cigna-administered plans because network providers typically agree to accept significantly reduced rates for their services.  (*Id.* ¶¶ 21, 26, 30.)  These savings are passed on to Cigna's clients and

2

customers in the form of lower premiums, benefit costs, and coinsurance obligations (which are calculated as a percentage of the amount providers have agreed to accept), as well as reduced expenses for beneficiaries who have not yet met their deductibles.  (*See, e.g.*, *id.* ¶¶ 26-32.)

**Cigna's Relationships With NIA and MedSolutions**

Cigna contracts directly with individual healthcare providers (e.g., doctors, hospitals, labs, etc.) for the provision of many healthcare services.  Cigna also contracts with entities that arrange for the provision of healthcare services through their own networks of contracted healthcare professionals and/or facilities.  These entities may also perform additional services for Cigna, including the administration of payments to the vendors' contracted healthcare professionals and/or facilities.  (*Id.* ¶ 21.)

To arrange for the provision of diagnostic medical imaging services, Cigna contracted with two such entities—NIA and MedSolutions.  Each of these entities has its own contracted network of radiology and diagnostic imaging facilities.[2]  (*Id.* ¶ 2.)  Cigna's agreements with NIA and MedSolutions specify the amounts that Cigna will pay NIA and MedSolutions when those vendors arrange for diagnostic imaging services to be provided to beneficiaries of Cigna-administered plans.  (*Id.* ¶¶ 2-3, 21.)  NIA's and MedSolutions' contracts with the diagnostic imaging facilities in their networks specify the amount that the facilities will accept as reimbursement in full (less patient cost-sharing amounts, such as deductibles, copayments, and coinsurance) for covered imaging services.  (*Id.* ¶¶ 10-11, 21-23.)  MSC concedes that it contracted with NIA and MedSolutions to participate in those vendors' networks.  (*Id.* ¶ 2.)

---

[2]    For other types of special services—chiropractic care, podiatry, and behavioral health, to name a few examples—Cigna has entered into contracts with other vendors.  Despite the fact that MSC's Complaint makes factual allegations that are limited to Cigna's relationships with NIA and MedSolutions regarding imaging services, MSC purports to bring a class action on behalf of "[a]ll healthcare providers" that submitted claims to "a third-party administrator," regardless of what kind of services the third-party vendors provide.  (*Id.* ¶ 43.)  MSC's purported class definition is wildly overbroad and cannot be maintained.

Cigna's relationships with NIA and MedSolutions are economically beneficial to all parties involved. Because NIA and MedSolutions specialize in arranging for diagnostic imaging services, Cigna benefits from their expertise in locating, evaluating, and recruiting potential diagnostic imaging facilities, as well as, from NIA's and MedSolution's ability to negotiate the terms and reimbursement rates for such services. Indeed, as MSC concedes, in most instances, NIA and MedSolutions get facilities to agree to a lower fee for any given imaging service than Cigna would otherwise be able to obtain. (*See id.* ¶ 21.) Additionally, because NIA and MedSolutions have already established networks of diagnostic imaging facilities, health insurers and administrators like Cigna need establish only a single relationship, saving Cigna the time and money it would have otherwise spent contracting with individual facilities. Imaging facilities also benefit because, by establishing a relationship with NIA and MedSolutions, those facilities gain access to all of the insurers and administrators that contract with NIA and MedSolutions. Finally, plan beneficiaries benefit from Cigna's relationships with NIA and MedSolutions. NIA and MedSolutions efficiently arrange for the provision of covered diagnostic imaging services at lower costs, which translates to lower medical costs to the beneficiaries. (*See id.*)

To understand the economic benefits of Cigna's relationships with NIA and MedSolutions for individuals covered under Cigna administered benefit plans, it is helpful to walk through the two patient examples in MSC's Complaint.

In the first patient example, K.D., a beneficiary of a Cigna-administered plan, obtained medical imaging services from MSC. (*Id.* ¶ 26.) Under Cigna's contract with NIA, Cigna reimbursed NIA $473 for the imaging services. (*Id.* ¶ 27.) K.D.'s financial responsibility turned on whether the imaging services were subject to the deductible specified in K.D.'s plan and, if so, whether K.D. had met that deductible. Because the services were subject to K.D.'s

4

deductible and because K.D. had not met the deductible limit, K.D. was responsible for the full $473 charge, which was counted against the deductible limit.  (*Id.*)  But, as explained below, K.D. was billed only $325, which is $148 less than the $473 for which K.D. was responsible under K.D.'s plan.  (*Id.*)

Following MSC's delivery of services to K.D., MSC submitted to NIA a statement for $1,850, which supposedly reflected its normal charge for the services provided.  (*Id.* ¶ 26.) However, under MSC's contract with NIA, MSC was not entitled to receive $1,850; rather, MSC had agreed to accept $325 for the diagnostic services at issue.  (*Id.*)  Because K.D. had not met the plan deductible, no payment was made by K.D.'s plan and MSC billed K.D. directly for $325, the amount due to MSC under its contract with NIA.  (*Id.* ¶¶ 26-27.)  There is no allegation in the Complaint that K.D. was ever billed for any amounts in excess of $325.  Similarly, MSC does not allege that it was paid anything less than the amount to which MSC was contractually entitled pursuant to its agreement with NIA.

K.D. financially benefited from Cigna's relationship with NIA in a variety of ways.  First, because NIA participates in Cigna's provider network, K.D. benefited directly from the lower reimbursement rate that NIA was able to negotiate with MSC—instead of potentially being responsible for MSC's billed charge of $1,850, K.D. was responsible for only $325.  (*Id.* ¶ 26.) Second, even though K.D. was billed only $325, Cigna credited $473 toward K.D.'s deductible, helping K.D. to exhaust the deductible and potentially reducing K.D.'s future out-of-pocket costs by $148.  (*Id.* ¶ 27.)  Third, because K.D.'s plan, as a whole, saved money through Cigna's relationship with NIA, K.D. benefited from lower plan costs in the form of reduced premiums.

Many of the same financial benefits are evident in the second patient example, A.G., discussed in MSC's Complaint.  There, A.G., a beneficiary of a Cigna-administered plan,

obtained imaging services from MSC.  (*Id.* ¶ 30.)   MSC concedes that these services were provided pursuant to its contract with MedSolutions.  (*Id.* ¶¶ 2, 30.)  Under Cigna's contract with MedSolutions, Cigna reimbursed MedSolutions $617.09 ($450 for the imaging scan itself and $167.09 for the contrasting agent used in conducting the scan).  (*Id.* ¶¶ 30-32.)  Though A.G. had not yet met the plan deductible, A.G. was only $130 away from the deductible limit.  (*Id.* ¶¶ 30-31.)  Thus, A.G. was responsible for only $130, and A.G.'s plan was responsible for paying the remaining $487.09 to MedSolutions.  (*Id.* ¶ 31-32.)

Following its delivery of services to A.G., MSC submitted to MedSolutions a statement of MSC's purported normal billed charge of $4,000 ($3,850 for the scan itself and $150 for the contrasting agent).  (*Id.* ¶ 30.)  However, MSC was not entitled to receive $4,000 because— under MSC's contract with MedSolutions—MSC had agreed to accept $497.08 for those services ($450 for the scan and $47.08 for the contrast).  (*Id.* ¶ 30.)  A.G. was responsible for the remaining $130 on the plan deductible, for which MSC billed A.G. directly.  (*Id.* ¶ 30.)  MedSolutions then paid MSC the balance of $367.08.  MSC does not allege that A.G. was billed for any amounts in excess of A.G's $130 deductible responsibility.  Nor does MSC allege that it was paid anything less than the amount ($497.08) to which MSC was contractually entitled through its relationship with MedSolutions.

The crux of MSC's Complaint is that Cigna should have calculated plan beneficiaries' cost-sharing responsibilities (i.e. deductibles, copayments, and coinsurance) using the reimbursement rates set forth in MSC's contracts with NIA or MedSolutions rather than looking to the reimbursement rates that Cigna negotiated with NIA or MedSolutions.  But MSC does not allege that either K.D. or A.G. were billed for, let alone, paid, any amounts in excess of what they would have been responsible for if Cigna had calculated their patient responsibilities in the

manner suggested by MSC.  K.D. was billed only $325, exactly what K.D. would have been billed if the calculation of K.D.'s cost-sharing responsibilities had been based on the reimbursement rate in MSC's contract with NIA.  Similarly, A.G. was billed for only the $130 remaining on the plan deductible, which is exactly what A.G. would have been required to pay had A.G.'s cost-sharing responsibility been calculated using the reimbursement rate to which MSC was entitled under its contract with MedSolutions.  Thus, MSC offers no allegation that any beneficiary of a Cigna-administered plan was harmed in any way by the practices alleged in the Complaint.

**Cigna's Reporting of its Medical Loss Ratio**

Tellingly, MSC does not allege—nor could it—that Cigna financially benefited from calculating patient cost-sharing responsibility based on the reimbursement rates set forth in Cigna's participating provider contracts with NIA or MedSolutions.  Instead, MSC alleges that Cigna's motive for calculating patient cost-sharing responsibility in this manner is to take advantage of benefits that MSC alleges might accrue to Cigna under the recently enacted Patient Protection and Affordable Care Act ("PPACA").[3]  (Compl. ¶¶ 35-42.)

Beginning in 2012, insurers like Cigna were required under the PPACA to calculate and report to the Department of Health and Human Services the insurer's "medical loss ratios" (MLRs) for the 2011 calendar year.  MLRs are calculated as the percentage of plan premiums that insurers spend on medical costs and quality improvement activities, as opposed to administrative overhead or profit.[4]  (*Id.* ¶ 36; *see also* 42 U.S.C. § 300gg-18 and 45 C.F.R. §§ 158.110-70.)  Under the PPACA, if an insurer's MLR for a group of plans in a particular

---

[3] Pub. L. 111-148, 124 Stat. 119 (2010).

[4] Under the PPACA, insurers do not need to calculate individual MLRs on a plan-by-plan basis.  Rather, insurers are required to calculate MLRs for groups of plans in specific business segments (individual, small group and large group) on a state-by-state basis.  42 U.S.C. § 300gg-18; 45 C.F.R. §§ 158.110-70.

business segment for a particular state is below a statutorily-specified percentage, then the insurer must rebate a portion of its premiums for the year in question to the policyholders in that group of plans.  (*Id.*; *see also* 45 C.F.R. §§ 158.210 and 158.211.)  Importantly, self-funded insurance plans are exempt from the MLR requirements under PPACA.  *See* PPACA § 2178; 45 C.F.R. § 158.102.  The vast majority of Cigna's business under its contracts with NIA and MedSolutions comprised self-funded employer-sponsored plans, which would not be eligible for rebates under the PPACA.

MSC's discussion of Cigna's MLR is a red herring.  As an initial matter, MSC does not explain how the MLR requirements that became effective in 2012 could be the motive for practices that, according to MSC, date back to at least 2007.  (Compl. ¶ 43.)  Moreover, MSC makes no allegations concerning the actual content of Cigna's MLR reporting.  Indeed, MSC does not even claim that Cigna reported as medical costs the full amount of its payments to NIA and MedSolutions or that it would have been inappropriate for Cigna so to do.  Even more importantly, MSC does not allege that its patients were actually harmed by Cigna's MLR reporting.  Specifically, MSC does not allege—nor could it—that K.D. and A.G. would have been entitled to rebates under the PPACA had Cigna adopted the practices suggested by MSC.

## ARGUMENT

**I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE MSC LACKS STANDING TO BRING ITS ERISA CLAIMS EITHER ON ITS OWN BEHALF OR AS A PURPORTED ASSIGNEE OF ITS PATIENTS.**

A key element of Article III standing is that the complainant has suffered a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotations omitted); *see also Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000).  As the party invoking federal jurisdiction, MSC bears the burden of establishing these elements.  *See*

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  If, on the face of MSC's Complaint, it fails to demonstrate this "irreducible constitutional minimum of standing," this Court must dismiss the dispute for lack of subject matter jurisdiction.  *Id.* at 578; *see also Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011) (Federal courts "must dismiss the case for lack of subject matter jurisdiction" if a plaintiff does not meet requirements of constitutional standing.); Fed. R. Civ. P. 12(b)(1).

### A.   MSC Lacks Standing To Bring Claims On Its Own Behalf.

As an initial matter, MSC lacks standing to bring any action on its own behalf because it has not asserted any injury that MSC itself suffered.  Specifically, while the crux of MSC's Complaint is that Cigna allegedly **misrepresented** the amount that MSC was reimbursed for the services MSC provided, MSC does not allege that it **received** less than it was entitled to receive.  Nor could MSC make such an allegation, as it concedes that the amounts it is owed are governed by its contracts with NIA and MedSolutions (*see*, *e.g.*, Compl. ¶ 2), and MSC does not allege that NIA or MedSolutions paid MSC less than their contracts required.  Because MSC has not alleged any injury that MSC itself suffered, MSC lacks Article III standing to sue on its own behalf.  *See Vt. Agency of Natural Res.*, 529 U.S. at 773.

### B.   MSC Lacks Standing To Bring Claims As An Assignee Of Its Patients.

Recognizing that MSC could not possibly assert a claim on its own behalf, MSC purports to assert its ERISA claims as the assignee of its patients.  But MSC's legal maneuvering fails for a variety of reasons.  First, MSC has not pled factual allegations demonstrating that it has received valid assignments from its patients, let alone assignments that would allow MSC to pursue the relief that it seeks.  Second, MSC has not alleged that its patients have suffered any injury.  Third, even if MSC had alleged harm related to Cigna's MLR reporting—and it has not—neither the PPACA nor its implementing regulations allow for a private right of action.

       1.     MSC lacks standing because it has not pled valid assignments, and because even a valid assignment would not extend to the relief MSC seeks.

MSC alleges that Cigna violated ERISA § 502(a)(3), a claim that can be brought only by a "participant, beneficiary, or fiduciary." *See* 29 U.S.C. § 1132(a)(3).  MSC does not claim to be a participant or fiduciary; rather MSC purports to bring its ERISA claims by virtue of the assignments it allegedly received from its patients who are beneficiaries of Cigna-administered plans subject to ERISA.  (Compl. ¶¶ 6, 9.)

Not all assignments are equal.  "Like any other contract, the scope of the assignment depends foremost upon the language of the agreement itself."  *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, Civ. No. 04-1253, 2006 WL 3469544, at *7 (D. Kan. Nov. 30, 2006).  For this reason, in order for MSC "to sufficiently plead its standing as an ERISA beneficiary," MSC must "provide the language of the actual assignments."  *Sanctuary Surgical Ctr., Inc. v. UnitedHealthcare, Inc.*, Civ. No. 10-81589, 2011 WL 6935289, at *4 (S.D. Fla. Dec. 30, 2011).

Here, MSC failed to plead the specific language of its alleged assignments.  Indeed, MSC has pled little more than the "naked assertion[]" that its assignments are sufficient to confer standing.  (Compl. ¶ 6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (internal quotation omitted).  At most, MSC alleges that it has the right to "bill and receive payments directly from the patient's insurance."  (Compl. ¶ 9; *see also id*. ¶ 6 ("Defendants pay Plan benefits directly to MSC as an assignee of claims assigned to it by CIGNA Insureds.").)  But without the specific language of MSC's alleged assignments, the Court cannot "determine whether, as a matter of law, the alleged assignments actually conferred upon [MSC] standing to assert" MSC's ERISA claims.  *Sanctuary Surgical*, 2011 WL 6935289, at *4.  Accordingly, this

Court must grant Cigna's motion to dismiss.  *Id.* (dismissing complaint for failure to plead specific language of assignments that purported to confer ERISA standing); *see also Via Christi*, 2006 WL 3469544, at *7 (holding that assignment of benefits did not confer standing under ERISA).

Even if MSC had pled valid assignments from its patients—and it has not—MSC's assignments would not entitle it to pursue the relief it seeks, namely injunctive or declaratory relief vis-à-vis Cigna for purportedly false EOBs and restitution for MSC's patients' alleged and hypothetical overpayments of cost-sharing amounts, e.g., deductibles and coinsurance.  This is because MSC's assignments could not extend to either of those types of relief.  As noted above, MSC, at best, has alleged a partial assignment encompassing only the right to receive direct payments from its patients' insurers, an assignment which MSC concedes leaves its patients "responsible for any medical costs insurance does not cover."  (Compl. ¶ 9.)  Importantly, MSC does not allege that its patients have assigned any right under ERISA other than the right to receive payment.  For example, MSC has not alleged that its patients have assigned the right to enforce provisions relating to EOB reporting or to recover restitution for overpayments of coinsurance or other patient cost-sharing responsibilities.

Partial assignments that confer only the right to receive payment and leave patients responsible for non-covered costs do not confer the right to recover for breaches of fiduciary duty under ERISA § 502(a)(3), which are precisely the claims that MSC purports to bring. *Sanctuary Surgical*, 2011 WL 6935289, at *4 (complaint alleging that patients had assigned the right to receive payments directly from insurer was not sufficient to confer standing on provider to sue for breach of fiduciary duty under ERISA); *see also Sanctuary Surgical Ctr., Inc. v. UnitedHealth Group, Inc.*, Civ. No. 10-81589, 2013 WL 149356, at *4 (S.D. Fla. Jan. 14, 2013)

11

("[T]he partial assignment of rights upon which plaintiffs predicate their standing to assert the derivative ERISA benefit claims is not an assignment of every right or cause of action which the participants or beneficiaries may have under ERISA.").

2.      Even if MSC had valid assignments, MSC would still lack standing because it has not alleged injury to its patients.

Even if MSC had pled a valid assignment on behalf of its patients—and it has not—MSC would still lack standing because MSC has failed to allege any injury suffered by its patients.  As a purported assignee, MSC "stands in the shoes" of its patients, and thus has standing only to the extent that its patients have standing.  A key element of Article III standing is that the complainant has suffered "concrete" and "actual or imminent, not conjectural or hypothetical" personal injury that is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  *Vt. Agency of Natural Res.*, 529 U.S. at 773.  In the context of an ERISA claim for unpaid benefits, only an actual or threatened out-of-pocket, financial loss relating to those benefits qualifies as an injury sufficient to confer standing.  *See Hall v. Aetna Life Ins. Co.*, 759 F. Supp. 2d 1321, 1326 (N.D. Fla. 2010) (holding that patients who received diagnostic imaging services and were not billed in excess of insurance coverage for those services were not injured and thus lacked standing to assert a breach of fiduciary duty under ERISA); *see also Williams v. Blue Cross & Blue Shield of Fla.*, Civ. No. 09-225, 2010 WL 4025857, at *3 (N.D. Fla. Oct. 12, 2010) (same); *Am. Med. Ass'n v. United Healthcare Corp*., Civ. No. 00-2800, 2007 WL 1771498, at *18-19 (S.D.N.Y. June 18, 2007) (dismissing provider's assigned ERISA claim at summary judgment because provider had not demonstrated that patient suffered a "distinct and palpable" injury in the form of financial loss); *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1328 (D. Utah 2005) (dismissing patient's ERISA claim at summary judgment because plaintiff had not suffered and was not

under the threat of suffering a "concrete and particularized" injury); *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, Civ. No. 09-2556, Slip Op. at 16 (S.D. Tex. June 25, 2012) (holding that provider lacked standing to sue as assignee of patients who "suffered no out-of-pocket loss").

But MSC does not allege that any of its patients were actually financially harmed or were even threatened with financial harm.  To the contrary, in the only two patient examples that MSC provides in its Complaint, the patient at issue either directly ***benefited*** from Cigna's contracts with MedSolutions and NIA or, at worst, was in the same financial position.[5]  Aside from these two patients, MSC pleads no other factual allegations that, if true, would show concrete injury to any other patients of MSC.[6]  Thus, MSC's patients lack standing, meaning MSC lacks standing too.  *Vt. Agency of Natural Res.*, 529 U.S. at 773.

       3.      MSC lacks standing to challenge Cigna's medical loss ratio reporting.

MSC lacks standing to challenge Cigna's MLR reporting because MSC has not alleged that its patients have been harmed by Cigna's actions.  Specifically, MSC does not allege—nor could it—that its patients would have been entitled to rebates under the PPACA had Cigna adopted the practices suggested by MSC.  Nor does MSC allege that its patients assigned, or could assign, to MSC the right to pursue those rebate payments from Cigna.

But even if MSC had manufactured such an allegation, MSC still could not recover for any alleged violations of MLR reporting.  A violation of a statutory duty gives rise to a tort claim

---

[5]    As noted above, in the example involving K.D. (Compl. ¶¶ 26-29), K.D. benefited by $148, as K.D.'s out-of-pocket payment of $325 was credited as $473 against the plan deductible.  In the example involving A.G. (Compl. ¶¶ 30-32), MSC concedes that A.G.'s financial responsibility ($130) would have been exactly the same in its alternative scenario.

[6]    MSC's naked allegation that "overstating the reported medical costs ***can*** also inflate the patient responsibility for payment of claims and/or alter the amounts extracted from subscribers' Health Savings Accounts" (Compl. ¶ 3) (emphasis added) cannot save MSC's claims. This is precisely the kind of "conjectural" or "hypothetical" injury that is insufficient to confer Article III standing. *Lujan,* 504 U.S. at 583; *Whitmore v. Arkansas*, 495 U.S. 149, 158-59 (1990).

only when the statute, explicitly or implicitly, provides for such a cause of action. *McDonald v. S. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 725 (11th Cir. 2002). Here, neither the MLR reporting statute (42 U.S.C. § 300gg-18) nor its implementing regulations (45 C.F.R. § 158.101 *et seq.*) explicitly or implicitly provide for a private right of action.

## II. MSC'S ERISA CLAIMS ARE ALSO SUBJECT TO DISMISSAL UNDER 12(b)(6) DUE TO A VARIETY OF LEGAL INSUFFICIENCIES.

Even assuming MSC had standing, its Complaint would still be subject to dismissal under Rule 12(b)(6) because MSC fails to "state[] a plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); Fed. R. Civ. P. 12(b)(6). MSC's "formulaic recitation[s] of the elements" of its ERISA claims are not enough. *Twombly*, 550 U.S. at 555. Rather, MSC must include sufficient factual allegations "to raise a right to relief above the speculative level." *Id.*

Despite MSC's vague and unsubstantiated assertion concerning Cigna's contracts with NIA and MedSolutions and Cigna's MLR reporting, MSC's factual allegations do not support its ERISA claims for at least three reasons. First, MSC has not pled that its patients exhausted their administrative remedies. Second, MSC has not pled that Cigna possesses the funds that MSC claims to seek. Third, MSC has not pled factual allegations that, if true, demonstrate that MSC has the right to pursue injunctive and equitable relief on behalf of its patients.

### A. MSC Has Not Pled That Its Patients Exhausted Their Administrative Remedies.

MSC cannot pursue its ERISA claims because it has not pled that its patients exhausted the administrative remedies provided for in their plans. "The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in

federal court." *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).

As the Eleventh Circuit explained, there are sound reasons for requiring exhaustion:

> Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1225-7 (11th Cir. 1985); *see also CP Motion, Inc. v. Aetna Health, Inc.*, Civ. No. 04-23140, 2008 WL 4826093, at *5 (S.D. Fla. Nov. 4, 2008) (dismissing ERISA claims where plaintiff "evince[d] no administrative appeal" and noting that "[p]ermitting discovery as to those 124 counts CP Motion failed to appeal exhaustively would allow the precise sort of expensive, premature judicial intervention *Mason* warned against").

Here, MSC does not even mention the administrative remedies available to its patients under their plans, let alone plead that their patients actually pursued any of these remedies.  Nor does MSC assert that the Court should excuse MSC's delinquencies.  *See In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1331 (S.D. Fla. 2002) (courts "'must apply the exhaustion requirement strictly' and 'recognize narrow exceptions only based on exceptional circumstances'") (quoting *Perrino v. S. Bell Tel & Tel. Co.*, 209 F.3d 1309, 1318 (11th Cir. 2000)).  Accordingly, MSC's ERISA claims should be dismissed.  *See, e.g.*, *Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, Civ. No. 11-80800, 2012 WL 28263, at *4-5 (S.D. Fla. Jan. 5, 2012) (dismissing plaintiff's ERISA claims where plaintiff did not appeal challenged benefit determinations and failed to plead sufficient facts showing futility); *In re Managed Care*, 185 F. Supp. 2d at 1331-33 (dismissing complaint "because the Plaintiffs have not pled any facts justifying their failure to abide by ERISA's exhaustion requirement").

**B.** **MSC Cannot Seek Restitution Because Cigna Does Not Possess, And Never Has Possessed, The Funds That MSC Seeks To Recover.**

MSC's ERISA claims fail for two additional, independent reasons. First, as noted above, MSC cannot show that Cigna owes any restitution because MSC's own allegations confirm that Cigna beneficiaries never paid any amounts, including deductibles and coinsurance, that they did not owe under their plans.  Second, even if MSC had alleged its patients overpaid—and MSC has made no such allegations—MSC still could not recover because it has not alleged that Cigna possesses any purported overpayments.

MSC brings claims only under Section 502(a)(3) of ERISA, which allows a participant, beneficiary, or fiduciary to "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief."  28 U.S.C. § 1132(a)(3).  "Appropriate equitable relief" under § 502(a)(3) includes "those categories of relief that were typically available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  *Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plans*, 513 F.3d 1223, 1225 (11th Cir. 2008) (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255-59 (1993)). But "not all relief falling under the rubric of restitution is available in equity."  *Id*.

For restitution to lie in equity, a plaintiff must seek "money or property identified as belonging in good conscience to the plaintiff [and which] could clearly be traced to particular funds or property in the defendant's possession."  *Id.*; *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (holding that claims under ERISA § 502(a)(3) are equitable in nature when they seek restitution of "specifically identifiable" funds, belonging to the Plan, that are "within the possession and control" of the party against whom relief is sought).  Indeed, "a defendant's possession of the disputed res is central to the notion of a restitutionary remedy which was

16

conceived not to assuage a plaintiff's loss, but to eliminate a defendant's gain." *Amschwand v. Spherion Corp.*, 505 F.3d 342, 348-49 (5th Cir. 2007).

First, MSC does not allege that its patients paid any cost-sharing amounts, like coinsurance or deductibles, beyond the amounts that MSC concedes that they are required to pay. (*See supra* Section I(B)(2).) Because there are no allegations that any "money or property identified as belonging in good conscience to the plaintiff" has been paid to any defendant— including Cigna—MSC cannot state a claim for restitution. *Wal-Mart Stores*, 513 F.3d at 1226.

Second, even if MSC had pled that plan beneficiaries spent money for which they are entitled to restitution, MSC has not pled a single fact even suggesting that Cigna is in possession of that money, or any part thereof.  To the contrary, MSC's allegations make clear that its patients' payments are in MSC's possession, not Cigna's.  (*See, e.g.*, Compl. ¶ 26 (alleging that MSC billed plan beneficiary K.D. for amount owed as deductible).)

Because MSC's own allegations, if true, demonstrate that Cigna is not in possession of the funds for which MSC seeks restitution, MSC's ERISA claims must be dismissed.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (holding that § 502(a)(3) claims failed because "the funds to which petitioners claim an entitlement . . . are not in respondents' possession."); *Stephens v. Citation Corp.*, 705 F. Supp. 2d 1291, 1298-99 (N.D. Ala. 2010) (dismissing § 502(a)(3) claims with prejudice against first co-defendant because the funds plaintiff sought to recover from first co-defendant were in the possession of the second co-defendant); *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 321 (2d Cir. 2003) (affirming the district court's decision on a motion to dismiss because funds "sought by the Plaintiffs were never in [defendant's] possession" and thus plaintiffs could not state a claim for restitution under § 502(a)(3)); *Halaris v. Viacom, Inc.*, Civ. No. 06-1646, 2007 WL 4145405, at *8 (N.D. Tex.

Sept. 21, 2007) (granting motion to dismiss where plaintiff "fail[ed] to identify any additional property in Defendants' possession to which he claim[ed] good faith ownership").

### C.     MSC Is Not Entitled To Injunctive or Declaratory Relief Concerning Cigna's EOBs.

MSC nakedly asserts that Cigna "manipulated and falsified EOBs and other communications to providers and subscribers." (Compl. ¶ 25.) But MSC never identifies which particular statements on Cigna's EOBs are false. Nor could MSC make such an allegation as Cigna's EOBs are truthful and fully compliant with the relevant law. At best, MSC suggests that Cigna's EOBs are untruthful because Cigna lists its contracted reimbursement rates with NIA and MedSolutions as the allowed amount for imaging services arranged by NIA and MedSolutions, as opposed to listing the lesser amount that NIA and MedSolutions contracted to reimburse MSC. But MSC's allegation ignores that Cigna does not have a direct provider agreement with MSC and that NIA and MedSolutions are properly identified as the provider of the services. Accordingly, Cigna correctly listed on its EOB its contracted reimbursement rates with NIA and MedSolutions as the allowed amount for the services arranged by them through their network of contracting facilities. Indeed, it would not have been proper for Cigna to list any other amount. Thus, notwithstanding MSC's vague assertions, MSC has not pled any factual allegations that demonstrate that Cigna's EOBs were false. Accordingly, MSC has no basis for seeking declaratory or injunctive relief.

## **CONCLUSION**

For the foregoing reasons, Cigna respectfully requests that the Court dismiss MSC's Complaint in its entirety.


Date:  February 28, 2013                                  Respectfully submitted,

                                                        /s/ Shari Gerson
                                                        Shari Gerson
                                                        GRAYROBINSON, P.A.
                                                        401 East Las Olas Boulevard, Suite 1850
                                                        P.O. Box 2328 (33303-9998)
                                                        Fort Lauderdale, Florida 33301
                                                        Telephone: (954) 761-8111
                                                        Fax:  (954) 761-8112
                                                        Shari.Gerson@gray-robinson.com

                                                        William H. Pratt*
                                                        Joshua B. Simon
                                                        Katherine L. McDaniel
                                                        KIRKLAND & ELLIS LLP
                                                        601 Lexington Ave.
                                                        New York, New York 10022
                                                        Telephone: (212) 446-4800
                                                        Facsimile: (212) 446-4900
                                                        joshua.simon@kirkland.com
                                                        katherine.mcdaniel@kirkland.com
                                                        william.pratt@kirkland.com


* To Be Admitted *pro hac vice*                         *Attorneys For Defendants Cigna Corporation and Connecticut General Life Insurance Company Cigna.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 28 2013 the foregoing document was filed with the Clerk of the Court using CM/ECF.  I further certify that a copy of the foregoing was served via CM/ECF and/or U.S. Mail to all parties on the attached service list.

Respectfully submitted,

/s/ Shari Gerson
Shari Gerson
Florida Bar No. 17035
Email:  shari.gerson@gray-robinson.com
401 East Las Olas Boulevard, Suite 1850
Fort Lauderdale, FL 33301
Telephone:  (954) 761-8111
Facsimile:  (951)761-8112

## SERVICE LIST

Edward H. Zebersky, Esq.
Zebersky Payne LLP
11 0 SE 6th Street
Fort Lauderdale, FL 33301
ezebersky@zpllp.com
lcruz@zpllp.com
ndiaz@zpllp.com
*Attorneys for Plaintiff*

Jeffrey M. Liggio, Esq.
Liggio Benrubi
1615 Forum Place, Suite 3-B
West Palm Beach, FL 33401
jliggio@liggiolaw.com
creves@;liggiolaw.com
kharmon@liggiolaw.com
ncuevas@liggiolaw.com
*Attorneys for Plaintiff*

D. Brian Hufford, Esq.
Robert J. Axelrod, Esq,
Anthony J. Maul, Esq.
Pomerantz Grossman Hufford Dahlstrom &
Gross LLP
600 Third Avenue
New York, NY 10016
dbhufford@pomlaw.com

Nina Greene, Esq.
Genovese Joblove & Battista, P.A.
100 SE Second Street
Suite 4400
Miami, FL  33131
ngreene@gib-law.com
*Attorneys for Defendant MedSolutions, Inc.*

David Tetrick, Jr., Esq.
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA  30309
dtetrick@kslaw.com
danderson@kslaw.com
*Attorneys for Defendant National Imaging
Associates, Inc.*

Joe R. Whatley, Jr., Esq.
Edith M. Kallas, Esq.
Whatley Kallas LLP
380 Madison Avenue
23rd Floor
New York, NY 10017
wwhatley@whatleykallas.com

Theresa M.B. Van Vliet
Genovese Joblove & Battista, P.A.
200 East Broward Boulevard, Suite 1110
Fort Lauderdale, Florida 33301
Telephone: (954) 453-8000
Facsimilie: (954) 331-2912
tvanvliet@gjb-law.com
cbucolo@gjb-law.com
kcabrera@gjb-law.com
sgrant@gjb-law.com
vlambdin@gjb-law.com
*Attorneys for Defendant MedSolutions, Inc.*

Grant S. Cowan
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 651-6745
Facsimile: (513) 651-6981
gcowan@fbtlaw.com
*Attorneys for Defendant MedSolutions, Inc.*

Mitchell W. Berger, Esq.
Celine A. Funk, Esq.
Berger Singerman, LLP
350 East Las Olas Boulevard
Suite 1000
Fort Lauderdale, FL  33301
mberger@bergersingerman.com
sfunk@bergersingerman.com
*Attorneys for Defendant, National Imaging
Associates, Inc.*