**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

---

MRI SCAN CENTER, LLC f/k/a MRI SCAN
CENTER INC., individually, and on behalf of
all others similarly situated,

        Plaintiff,

   vs.

                                Case No.: 0:13-CV-60051-WPD

NATIONAL IMAGING ASSOCIATES,
INC.; MEDSOLUTIONS, INC.; CIGNA
CORPORATION and CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,

        Defendants.

---

**DEFENDANT NATIONAL IMAGING ASSOCIATES, INC.'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM**

Defendant National Imaging Associates, Inc.'s ("NIA") and Plaintiff MRI Scan Center, LLC ("MSC") have a written contract that defines their relationship. The contract anticipated that disputes might arise between the parties, and devotes an entire section—Section 10—to "Resolution of Disputes." Section 10.1 proceeds in logical order, first requiring the "Parties to use good faith efforts to resolve all disputes arising out of or relating to this Agreement within sixty (60) days of written notice that such dispute exists." The Complaint makes no allegation that Plaintiff gave NIA written notice of this dispute prior to filing this lawsuit, let alone engaged in any good faith efforts to avoid it.

The contract, however, also explains that, if the parties fail to resolve their dispute, despite such good faith efforts, "then the sole remedy of the party initiating the dispute shall be submission of the dispute to binding arbitration" if the amount in controversy is $500,0000 or

less, and if more than $500,000 is in controversy, "the dispute may be submitted to a court of competent jurisdiction in Missouri, after the good faith efforts described in . . . Section 10.1 are exhausted."   The contract buttresses this venue requirement by providing in Section 12.8 that "[a]ny and all judicial proceedings relating to this Agreement shall be maintained in the state or federal courts in Missouri, which courts shall have exclusive jurisdiction for such purpose." Despite its promise to abide by this dispute resolution process, which contains enforceable arbitration and venue provisions, MSC instead prematurely and inappropriately seeks relief in this Court.

The Complaint fails to allege the amount in controversy here, but the Court need not resolve that issue to dispose of this case.   This Court should hold MSC to its promises, and dismiss or stay the case as to NIA, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and compel MSC to follow the dispute resolution process to which it agreed with NIA, including, if necessary, through binding arbitration or litigation in the proper venue after complying with all pre-arbitration/pre-litigation requirements.   Alternatively, NIA moves to dismiss the Complaint under 12(b)(3) of the Federal Rule of Civil Procedure because MSC and NIA executed a contract containing a mandatory forum-selection clause, which requires a state or federal court in Missouri to adjudicate MSC's claim against NIA.  Also in the alternative, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim because of its utter failure to allege exhaustion of administrative remedies, as required in all ERISA cases under controlling law; because the Complaint fails to allege any involvement by NIA in the allegedly false Explanations of Benefits issued by Cigna; because there is no private cause of action available to enforce the violations of the Patient Protection and Affordable Care Act alleged in the Complaint; and, in any event,

because NIA is not a health insurance issuer to which the provisions of the ACA alleged in the Complaint apply.  In addition, NIA adopts the Cigna Defendants' arguments concerning MSC's lack of standing to pursue its claims, and, to avoid burdening the Court with duplicative arguments, incorporates Cigna's brief with respect to the standing issue by reference.[1]  For any or all of these reasons, the Court should dismiss the Complaint.

I.     **BACKGROUND**

    A.  **MSC's Factual Allegations**

    MSC provides health care services in the areas of Nuclear Medicine and Magnetic Resonance Imaging ("MRI").[2]  Some of the patients to whom MSC provided these diagnostic imaging services received health coverage through employer-sponsored health plans that were insured and/or administered by Cigna Corporation and Connecticut General Life Insurance Company (together "Cigna").[3]  The plans at issue are governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").[4]

    During part of the alleged "ERISA Class Period" (as defined in the Complaint ¶ 43) and through November 30, 2011, NIA provided radiology benefits management services, under the terms of an agreement between NIA and Cigna, for certain health insurance plans issued or administered by Cigna.[5]  Through its agreement with Cigna, NIA made its network of health care providers available to participants covered by health plans issued or administered by Cigna, and undertook certain administrative responsibilities for claims submitted by those network providers on behalf of their patients.  MSC was one of those providers, and NIA had a contract with MSC,

---

[1] *See* Cigna Defendants' Motion to Dismiss Class Action Complaint or, in the Alternative, to Compel Arbitration.
[2] Compl. ¶¶ 2, 8.
[3] *Id.* ¶¶ 5, 12.
[4] *See* 29 U.S.C. §§ 1001–1461.
[5] Compl. ¶¶ 2–4.

formally known as a "participating imaging facility agreement" (the "Imaging Facility Agreement").[6]   Under the Imaging Facility Agreement, when MSC provided imaging services to a patient whose health plan was issued or administered by Cigna, MSC submitted the claim to NIA.[7]   Under the agreement between Cigna and NIA, NIA paid allowed claims from MSC based upon the "Allowed Amount" agreed to in the Imaging Facility Agreement, and Cigna paid NIA certain fees for administering and processing these claims.[8]   NIA issued a Remittance Advice ("RA") or an Explanation of Payment ("EOP") to MSC along with the claims payments to describe the results of its claims processing.[9]   Cigna separately issued an Explanation of Benefits ("EOB") to the plan participant or beneficiary.[10]

MSC alleges "systemic and repeated violations" of ERISA by NIA, Cigna and Defendant MedSolutions, Inc., and in particular, that Defendants entered into a "scheme" to manipulate Cigna's "Medical Loss Ratio."[11]   As explained below, the Public Health Services Act, as amended by the Patient Protection and Affordable Care Act ("ACA") enacted in March 2010, requires health insurance issuers, such as Cigna, to maintain certain "medical loss ratios"—i.e., the ratio of each premium dollar received spent to pay medical claims and activities that improve

---

[6] Attached hereto as Exhibit A, the February 28, 2012 Humberto Hernandez Affidavit at Exhs. 1 and 2.  NIA has an Imaging Facility Agreement with MRI Scan Center Inc. (the predecessor to MSC according to the complaint caption) dated January 1, 2011, and an Imaging Facility Agreement with "MRI Scan and Imaging Centers South" (an apparently related entity operating at the same location as MSC according to exhibit C to that agreement) dated May 1, 2012.  To the extent MSC raises an issue about which is operative, the Court need not decide the issue for the purposes of this motion because the language NIA relies on is identical in the two contracts. For ease of reference, this brief refers to the singular "Imaging Facility Agreement."
[7] *Id.*
[8] Compl. ¶ 21.  The "Allowed Amount", as explained in the Complaint, is the discounted amount MSC agreed to accept, in its contract with NIA, for a particular service.
[9] Compl. ¶ 23, 26.
[10] Compl. ¶¶ 3, 23, 27.
[11] Compl. ¶¶ 3, 8, 35.

the quality of care.[12]   Cigna's alleged desire to "report an inaccurate medical loss ratio," and thereby avoid rebates, allegedly drove it and NIA (and MedSolutions) to "mischaracterize the administrative fees Cigna pays to NIA and MedSolutions as medical costs."[13]

To illustrate the alleged ERISA violations and the medical loss ratios "scheme", MSC alleges that one of its patients, K.D., was covered under a Cigna-insured health plan.[14]   MSC says it performed an MRI on K.D. in 2011 and submitted an $1,850 claim to NIA for this service.  In conformance with the Imaging Facility Agreement, NIA discounted MSC's charge to an agreed "Allowed Amount" of $325, and NIA documented this payment on an EOP form that it sent to MSC.[15]   Cigna, in turn, allegedly sent K.D. an EOB form, as required under ERISA, explaining that MSC had billed $473 for its services,[16] which was applied to K.D.'s deductible, and was the amount that she owed MSC.[17]   MSC alleges that "[h]ad K.D.'s claim not been taken up by [her] deductible, MSC would have been paid an allowed amount of $325 . . ., but $473 . . . would have been paid by Cigna as 'benefits' to NIA.  In other words, Cigna is able to mask administrative fees it is paying to NIA, and recast them as medical expenses for the patient's benefit."[18]  Stated another way, MSC alleges that the discrepancy between the Allowed Amounts on the EOB and the EOP in K.D.'s case allegedly allowed Cigna to report having paid an extra $148 toward payment of medical claims, and thereby improves its medical loss ratio.  NIA, according to MSC, is complicit in this scheme, though MSC does not allege how NIA benefitted from it.  Nor does MSC allege that NIA was involved in issuing the allegedly false EOBs.

---

[12] *Id.* ¶ 36 (citing 42 U.S.C. § 300gg-18, as amended).
[13] *Id* ¶ 3.
[14] *Id.* ¶ 26.
[15] *Id.*
[16] *Id.* ¶ 27.
[17] *Id.*
[18] *Id.* ¶ 28.

### B.  MSC Agreed to Arbitrate Disputes Like This.

In any event, MSC agreed to arbitrate disputes like this one with NIA.  As explained above, the Imaging Facility Agreement between MSC and NIA provides that "[t]he Parties agree to use good faith efforts to resolve all disputes arising out of or *relating to* this agreement," and "[i]f the dispute . . . involves an amount in controversy that is equal to or less than five hundred thousand dollars ($500,000.00), then the sole remedy of the party initiating the dispute shall be submission of the dispute to binding arbitration . . . ."[19]  This broad language ("all disputes . . . relating to this Agreement") undercuts MSC's attempt to switch identities and avoid its alternative dispute resolution obligations by claiming that it is acting as an assignee of its patients (from whom MSC allegedly took limited assignments).[20]   To the extent MSC's allegations of having been "underpa[id]" as a result of the alleged medical loss ratio "scheme" is an attempt to directly recover additional compensation from NIA for the services that it rendered, the Imaging Facility Agreement forecloses that argument, too.  In Section 2.9.2, MSC agreed to accept "payment in full" according to a fee schedule that caps its payment at the Allowed Amount.  This case belongs in arbitration.

### C.  MSC Agreed to Bring Other Disputes Against NIA in a State or Federal Court in Missouri.

To the extent MSC establishes, during the good faith process required by the Imaging Facility Agreement, that its dispute with NIA exceeds $500,000, then MSC may sue NIA, but only in a court sitting in Missouri.  The Imaging Facility Agreement mandates that "[a]ny and all judicial proceedings relating to this Agreement shall be maintained in the state or federal courts

---

[19] Exh. A at Exh. 1 § 10.1(a),(b) (emphasis added).
[20] Compl. ¶ 9.

of Missouri, which courts shall have exclusive jurisdiction for such purpose."[21]

### D. Exhaustion Requirements.

Even assuming MSC can somehow escape its obligations under Sections 10.1 and 12.8 by claiming to be pursuing its claims as the assignee of its patients under certain assignments,[22] it still must exhaust the administrative procedure requirements contained in its assignors' ERISA plans. The Complaint contains no allegation that MSC even attempted to exhaust those remedies, as required by the Eleventh Circuit in all ERISA cases. Nor does the Complaint allege that MSC followed the pre-arbitration / pre-litigation good faith process required under the Imaging Facility Agreement, and Missouri law, by which it is governed.

## ARGUMENT AND CITATION OF AUTHORITIES

**I.     The Court Should Compel Arbitration and Dismiss the Claim Against NIA Under Rule 12(b)(1) Because MSC Agreed to Arbitrate This Dispute.**

In light of MSC's failure to abide by its good faith obligations, and to allege that $500,000 or less is in dispute between it and NIA, the Court should compel arbitration and, at a minimum, dismiss the claim against NIA. As the Imaging Facility Agreement states, "[t]he Parties agree to use good faith efforts to resolve all disputes arising out of or relating to this agreement," and "[i]f the dispute . . . involves an amount in controversy that is equal to or less than five hundred thousand dollars ($500,000.00), then the sole remedy of the party initiating the dispute shall be submission of the dispute to binding arbitration . . . ."[23] Because MSC fails to allege or establish that more than $500,000 is in controversy, MSC's "sole remedy" is binding arbitration, not this lawsuit.

---

[21] Exh. A at Exh. 1 § 12.8.
[22] Compl. ¶ 9.
[23] Exh. A at Exh. 1 § 10.1(b).

A. __Dismissal under Rule 12(b)(1).__

Federal Rule of Civil Procedure 12(b)(1) requires the Court to dismiss an action when subject matter jurisdiction is lacking. Where, as here, the defendant challenges subject matter jurisdiction as a matter of fact (i.e., a "factual attack"), the Court may "look at materials from outside the four corners of the complaint insofar as they relate to jurisdictional questions."[24] Although the Eleventh Circuit has not directly addressed whether a motion to compel arbitration arises under Rule 12(b)(1), when all of the claims in a case are subject to a valid arbitration agreement, courts often "dismiss the claims under Rule 12(b)(1) and compel[] arbitration."[25] This approach comports with the spirit of Rule 12(b)(1) because "the scope of Rule 12(b)(1) is flexible, often serving as a procedural vehicle for raising various residual defenses."[26]

B. __The Court Should Compel MSC To Honor Its Contractual Commitment to Resolve Its Claim Against NIA Through Arbitration.__

Because MSC agreed that "all disputes" between it and NIA "relating to" their contract would be resolved by binding arbitration and has failed to allege that the amount in controversy is more than $500,000, the Court should dismiss this case and compel MSC to pursue its claim through arbitration. The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity

---

[24] *Commodity Futures Trading Comm'n v. G7 Advisory Services, LLC*, 406 F. Supp. 1289, 1292 (S.D. Fla. 2005) (Dimitrouleas, J.) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990)).

[25] *See, e.g.*, *Omni Pinnacle, LLC v. ECC Operating Services, Inc.*, 255 F. App'x 24, 26 (5th Cir. 2007).

[26] 15 Wright & Miller, § 1350 (3d ed.). *See also Bannett v. Hankin*, 331 F. Supp. 2d 354, 356 (E.D. Pa. 2004) (granting Rule 12(b)(1) dismissal in light of contract's arbitration provision); *West Shore Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 791 F. Supp. 200, 203–04 (N.D. Ill. 1992) (same); *Morrison v. Colorado Permanente Med. Group, P.C.*, 983 F. Supp. 937, 943–44 (D. Colo. 1997) ("[T]he arbitration clause in the medical services agreement in this case is valid under the FAA. Accordingly, I am without subject matter jurisdiction as to plaintiffs' claims brought against arbitration defendants.").

for the revocation of any contract."[27]   Indeed, "the FAA was intended to promote the 'liberal federal policy favoring arbitration agreements.'"[28]   Courts must conduct a two-step inquiry when determining whether to compel arbitration.[29]   First, the Court must determine whether the parties agreed to arbitrate the dispute.[30]   Second, the Court must decide "whether legal constraints external to the parties' agreement foreclosed arbitration."[31]

Here, MSC and NIA unquestionably agreed to arbitrate this dispute because the dispute "relates to" the Imaging Facility Agreement.  This issue is "resolved by applying the general law of contracts" of Missouri[32] because the parties agreed that Missouri law would govern their contract.[33]   Under Missouri law, MSC's assertions regarding improprieties in the "Allowed Amount" reflected on EOPs issued to it by NIA and EOBs issued to Cigna for services that MSC provided to Cigna participants and beneficiaries and that it has been "underpa[id]" as a result of NIA's alleged participation in the "scheme . . . to falsely increase the medical expense portion of Cigna's reported [medical loss ratio]"[34] are "clearly . . . relate[d] to" the Imaging Facility Agreement.[35]   Indeed, absent that contract, MSC would not have billed NIA anything for the services, NIA would not have issued an EOP reflecting an "Allowed Amount" for the services, and NIA would not be obligated to pay MSC anything, let alone ensure that MSC had not been "underpa[id]."   Nor can MSC shirk its contractual responsibility to arbitrate its claim against

---

[27] 9 U.S.C. § 2.
[28] *Roberson v. Clear Channel Broad., Inc.*, 144 F. Supp. 2d 1371, 1374 (S.D. Fla. 2001) (Dimitrouleas, J.) (quoting *Green Tree Financial Corp–Alabama v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513, 522 (2000)) (enforcing arbitration agreement).
[29] *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004).
[30] *Id.*
[31] *Id.* (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628, 105 S. Ct. 3346) (internal quotation marks omitted).
[32] *Missouri & N. Arkansas R. Co., Inc.*, 3 S.W.3d 869, 871 (Mo. Ct. App. 1999).
[33] Ex. 1 to Affidavit of H. Hernandez, attached as Ex. A § 12.8.
[34] Compl. ¶ 35.
[35] *Tractor-Trailer Supply Co. v. NCR Corp.*, 873 S.W.2d 627, 630 (Mo. Ct. App. 1994).

NIA by hiding behind its alleged assignors.[36]

The remaining issue under the first step in the Court's inquiry is whether the amount in dispute between NIA and MSC is $500,000 or less (and therefore subject to mandatory arbitration). The burden to show otherwise was MSC's, and it failed to do so. Several courts within this district have ruled that the party opposing a Motion to Compel Arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.[37] Here, there is "no allegation of fact" in the Complaint establishing that the amount MSC seeks from NIA exceeds $500,000. And MSC is not entitled to the benefit of the doubt, either, because "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[38]

Absent an affirmative showing of some insurmountable barrier to arbitration, the Court must resolve the second step in its analysis in favor of arbitration, too. MSC bears the burden of establishing that there is some legal constraint external to the parties' agreement that would prevent arbitration. It has pleaded none, and could not plausibly do so, either.

Because MSC's claim against NIA is subject to a binding arbitration clause, the Court

---

[36] *See Premier Health Center, P.C. v. UnitedHealth Group* 2012 WL 1098543, at *3-4 (D.N.J. March 30, 2012) (providers could not escape the "broad" clause requiring arbitration of 'any dispute arising out of or relating to' the network agreement" despite providers' assertion that they "were standing in the shoes of their patients as assignees."); *see also Ass'n of New Jersey Chiropractors v. Aetna, Inc.,* 2011 WL 2489954, at *14 (D.N.J. June 20, 2011) (under similar facts, holding that provider plaintiffs' ERISA claims "arose out their provider agreements" because they "clearly relate to services these medical professionals provided in accordance with their provider agreements," even though claims were brought as assignees of their patients); *Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* 713 F. Supp. 2d 734, 740 (N.D. Ill. 2010)(same).

[37] *See, e.g., Aronson v. Deal Witter Reynolds, Inc.*, 675 F. Supp. 1324, 1325 (S.D. Fla. 1987); *see also Bhim v. Rent-A-Ctr.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (comparing burden to avoid arbitration to "that of a party seeking summary judgment.").

[38] *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941 1983).

should compel arbitration and dismiss the Complaint as to NIA.[39]   MSC's single claim against

NIA can be resolved in arbitration, so the Court should dismiss the Complaint as to NIA and

compel MSC to follow the good faith efforts to resolve this dispute contained in Section 10.1(a)

of the Imaging Facility Agreement, and if those are unsuccessful, MSC may pursue its individual

claims in the arbitration mandated in Section 10.1(b).[40]

## II.   Alternatively, the Court Should Dismiss this Case Under Rule 12(b)(3) Because Venue is Improper.

Imaging Facility Agreement Section 10.1(b) also requires litigation, if any, of disputes

greater than $500,000 to be submitted to a "court of competent jurisdiction in Missouri, after the

good faith efforts described in Section 10.1 are exhausted."   That venue provision is made

express in Imaging Facility Agreement Section 12.8, which mandates that "[a]ny and all judicial

proceedings relating to this Agreement shall be maintained in the state or federal courts of

Missouri, which courts shall have exclusive jurisdiction for such purpose."   In the Eleventh

Circuit, "Rule 12(b)(3) is the proper avenue for a party's request for dismissal based on a forum-

selection clause."[41]   Moreover, "[w]hen a Federal Rule of Civil Procedure 12(b)(3) motion to

---

[39] The Eleventh Circuit has not directly addressed whether a district court may dismiss a case after compelling arbitration or must stay the case pending arbitration, but the Eleventh Circuit has frequently affirmed decisions by district courts dismissing a case after compelling arbitration.  *See, e.g.*, *Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. App'x 863 (11th Cir. 2006); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Jackson v. Cintas Corp.*, 425 F.3d 1313 (11th Cir. 2005)).

[40] The Court's order should only permit MSC to bring its individual claims against NIA because the Imaging Facility Agreement does not permit class arbitration.  *See Stolt-Nielsen v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) (finding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.").  Therefore, MSC must be compelled to arbitrate its claim against NIA on an individual basis.  *Id.* at 1773.  (allowing a party to proceed on a class basis where it was not affirmatively authorized in the contract would violate the "basic precept that arbitration is a matter of consent, not coercion.")

[41] *Slater v. Energy Services Group Int'l, Inc.*, 634 F.3d 1326, 1333 (11th Cir. 2011); *see also Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1238 (11th Cir. 2011) ("[W]e conclude that

dismiss for improper venue is based on a forum-selection clause, the plaintiff has the burden of showing that [a different] venue is proper."[42]   "Mandatory forum-selection clauses are presumptively valid and enforceable absent a strong showing that enforcement would be unfair or unreasonable under the circumstances."[43]   Because the "use of the term 'shall' is one of requirement," the Eleventh Circuit has explained, a forum-selection clause stating that any and all judicial proceedings relating to an agreement "shall" be maintained in a particular forum are "not permissive, but mandatory."[44]

To meet its burden of showing that venue in this Court is proper, MSC will have to prove that the forum-selection clause (1) was induced by fraud or overreaching; (2) that MSC would be deprived of its day in court because of inconvenience or unfairness; (3) that the law of the chosen forum would deprive MSC of a remedy; or (4) enforcement of the clause would contravene public policy.[45]   MSC has failed to allege any of these exceptions and could not do so.

First, there is no plausible argument that the forum-selection clause was induced by fraud or overreaching.   The forum-selection clause was negotiated at arm's length by sophisticated business entities, as MSC agreed in Section 12.15 of the Imaging Facility Agreement.[46] Second, in light of its knowing and voluntary agreement to venue in Missouri, MSC cannot reasonably argue that it would be inconvenient or unfair to require MSC to bring this lawsuit there.   Indeed,

---

the District Court erred in failing to give effect to the [forum-selection] clause and grant [the defendant's] motion to dismiss for improper venue. We reverse and remand with instructions to dismiss this action without prejudice based on improper venue.").

[42] *Lobo v. Celebrity Cruises, Inc.*, 426 F. Supp. 2d 1296, 1304 (S.D. Fla. 2006), *aff'd*, 488 F.3d 891 (11th Cir. 2007).

[43] *Slater*, 634 F.3d at 1331 (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009)).

[44] *Id.*

[45] *See id.* at 1331.

[46] *See* Imaging Facility Agreement §12.15 (stating "Imaging Facility represents and warrants that it has full legal power and authority to bind its employees and contractors to the provisions of this Agreement.")

"any inconvenience the plaintiff[] would suffer by being forced to litigate in [Missouri] was foreseeable at the time of contracting."[47]

Third, the choice of law provision invoking Missouri law will not deprive MSC of a remedy. MSC's ERISA claim—the sole claim in this lawsuit—arises under the same federal law, regardless of the venue. Fourth, enforcing the forum-selection clause will not "contravene public policy." Far from it, upholding the legally-binding agreement of MSC to bring disputes related to the Imaging Facility Agreement in a court sitting in Missouri will promote the important public policy of freedom of contract.

MSC and NIA executed an agreement mandating that disputes under the Imaging Facility Agreement that end up in litigation shall be maintained only in a court sitting in Missouri. Accordingly, even if the Court does not compel arbitration, Eleventh Circuit precedent requires the Court to dismiss the Complaint under Rule 12(b)(3) for lack of proper venue.[48]

## III.   Alternatively, the Court Should Dismiss the Complaint Under Rule 12(b)(6).

### A.   Legal Standard for Motion to Dismiss

Rule 12(b)(6) authorizes the early dismissal of claims based on dispositive issues of law. "This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding."[49] Thus, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."[50]

---

[47] *Rucker*, 632 F.3d at 1237.
[48] *See Slater*, 634 F.3d at 1331.
[49] *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).
[50] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation and citation omitted). *See also Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1325, 1347 (quoting *Marshall Cty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)

In evaluating the legal sufficiency of claims under Rule 12(b)(6), the Court accepts well-pleaded facts as true, but disregards legal conclusions and unwarranted deductions of fact.[51]  The Court may consider documents attached to a motion to dismiss "where the attached document is central to the plaintiff's claim and is undisputed in the sense that the authenticity of the document is not challenged."[52]  The Imaging Facility Agreement under which MSC billed and collected payments for its services as it pertains here forms the basis of the claim MSC asserts in this case, and thus is central to the claim, so the Court may consider it under Rule 12(b)(6).[53]

    **B.**    **The Court Should Dismiss MSC's Complaint Because MSC Has Failed to Exhaust Its Administrative Remedies.**

MSC's failure to allege any facts establishing that it exhausted its adminstrative remedies or that an attempt to do so would have been futile is fatal to its ERISA claim.  Well-established Eleventh Circuit and Missouri law requires the Court to dismiss MSC's Complaint.

    **1.**    **The Eleventh Circuit's ERISA Exhaustion Doctrine.**

It is well-settled in the Eleventh Circuit that a plaintiff seeking to assert claims under ERISA must attempt to resolve those claims administratively before proceeding to litigation.[54]  The Eleventh Circuit has long recognized that the efficient operation of the federal law governing employee benefit plans requires that plan administrators and participants have the opportunity to resolve disputes through a streamlined administrative process before embarking

---

"Taking the facts as true, a court may grant a motion to dismiss when, 'on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'").

[51] *Day v. Taylor*, 400 F.3d 1272, 1277 (11th Cir. 2005).

[52] *Foley*, 849 F. Supp. 2d at 1347.

[53] *See Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n. 7 (11th Cir. 2006)

[54] *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("Our law is well-settled that 'plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'") (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997) (other citations omitted)).

on litigation.[55]   Importantly, the "exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself."[56]   Also, "[t]he exhaustion requirement applies to complaints for breach of fiduciary duty under ERISA regardless of whether the breach was committed by a third party administrator of the plan or the employer."[57]

The Eleventh Circuit has repeatedly emphasized that it "appl[ies] the exhaustion requirement strictly and recognize[s] narrow exceptions only based on exceptional circumstances."[58]   Exhaustion is excused only if the plaintiff makes a "clear and positive" showing that resort to administrative remedies would be futile or inadequate, or that the plaintiff was denied meaningful access to the administrative review process.[59]   Under Eleventh Circuit precedent, an argument of futility is "speculative" if a participant "ha[s] not attempted to pursue administrative remedies."[60]   Accordingly, to survive a motion to dismiss under Eleventh Circuit law, an ERISA plaintiff must allege it has exhausted all available administrative remedies or that it was denied the opportunity to do so.[61]

---

[55] *See Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985) ("[I]mposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures.")

[56] *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1224 (11th Cir. 2008)(citation and internal quotation marks omitted).

[57] *Id.*

[58] *Perrino*, 209 F.3d at 1318.

[59] *Bickley*, 461 F.3d at 1330 (citation and internal quotation marks omitted).

[60] *Lanfear*, 536 F.3d at 1225.

[61] *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160–61 (11th Cir. 1992) (affirming dismissal of ERISA claims because plaintiff "did not allege anything about whether she pursued any available relief under the claims procedures terms of [defendant's] employee benefits plan"); *see also In re U.S. Sugar Corp. Litig.*, 669 F. Supp. 2d 1301, 1319 (S.D. Fla. 2009) (Middlebrooks, J.) (dismissing ERISA breach of fiduciary claims based on plaintiff's failure to exhaust plan's administrative process).

2. **The Court Must Dismiss the Complaint Because MSC Failed to Allege That It Exhausted Its Administrative Remedies as Required By ERISA.**

The Complaint alleges that "MSC has its patients execute written assignments in which they agree that MSC may bill and receive payments directly from the patient's insurance" and that "[t]hese assignments give MSC standing to pursue ERISA claims on those patients' behalf."[62]   Accordingly, under MSC's theory of the case (*i.e.,* that plan participants assigned their rights to MSC), MSC was bound to follow the claims and appeals procedure set forth in the applicable plan documents, just as the participants were bound to do under their plan terms.  Yet MSC's Complaint makes absolutely no allegation that it attempted to exhaust the plans' adminstrative remedies before filing this lawsuit.  This failure alone is fatal to its Complaint because the Eleventh Circuit requires ERISA plaintiffs to exhaust their administrative remedies before filing a lawsuit.[63]

3. **MSC May Not Attempt to Salvage the Complaint By Arguing that Exhuastion Would Have Been Futile Because MSC Has Failed to Plead Futitily.**

MSC will likely argue that it was not required to exhaust its adminstrative remedies because doing so would have been futile.  The Court should reject this argument. Even if MSC could ultimately establish that seeking administrative review would have been futile (though it cannot establish that proposition as a factual matter), MSC would nevertheless be required to plead a plausible set of facts with respect to futility in its Complaint.[64]   The Complaint does not contain any facts that could establish that pursuing administrative remedies would have proved

---

[62] Compl. ¶ 9.
[63] *See Perrino*, 209 F.3d at 1315.
[64] *See Byrd*, 961 F.2d at 160–61 (affirming dismissal of ERISA claims because plaintiff "did not allege anything about whether she pursued any available relief under the claims procedures terms of [defendant's] employee benefits plan").

futile if MSC had taken this required step.

### 4.   MSC Failed to Allege That It Exhausted the Internal Dispute Resolution Process That It Is Contractually Bound to Follow.

MSC likewise fatally fails to allege that it exhausted the internal remedies provided in the Imaging Facility Agreement prior to filing this lawsuit.   MSC agreed in its contract with NIA to follow specific internal dispute resolution processes before filing a lawsuit against NIA. Missouri law governs the Imaging Facility Agreement[65] and Missouri courts require plaintiffs who are contractually obligated to pursue internal dispute resolution processes agreed to in a contract to do so before they may sue under that contract.[66]   Because MSC obligated itself to follow the appeal and grievance procedures of NIA and Cigna, and MSC has failed to allege that it has done so, the Court should dismiss the Complaint.

### C.   The Complaint Fails to State a Claim for Relief against NIA under ERISA.

The Court should dismiss the Complaint as to NIA because MSC does not allege any plausible claim that NIA violated ERISA § 502(a)(3), under which the sole count in the Complaint arises.   ERISA § 502(a)(3) permits a participant to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations or …to enforce any provisions of this subchapter or the terms of the plan." [67]   The only express violation of ERISA alleged in the Complaint is the issuance of allegedly incorrect EOBs.   Even so, the Complaint does allege that NIA issued any EOBs.   To the contrary, MSC alleges that "[o]nce a benefit is determined, CIGNA issues an EOB to the CIGNA Insured . . . ."[68]   In light of this explicit allegation, the

---

[65] Exh. A at Exh. 1 § 12.8.
[66] *See Williams v. Kansas City Pub. Serv. Co.*, 294 S.W.2d 36, 39 (Mo. 1956).
[67] 29 U.S.C. § 1132(a)(3).
[68] Compl. § 23. (emphasis added).

Case 0:13-cv-60051-WPD   Document 29   Entered on FLSD Docket 02/28/2013   Page 18 of 23

conclusory allegation that "[all] Defendants mischaracterized the nature of NIA's and MedSolution's role" in the EOBs is simply not plausible.  Because the Complaint fails to allege that NIA violated ERISA, the Court should dismiss NIA from this lawsuit.

**D. The ACA's Medical Loss Ratio and Repayment Requirements Cannot Form the Basis of an ERISA Claim.**

**1. Background on Medical Loss Ratio and Repayment Requirements.**

To the extent MSC's claim is based on the medical loss ratio and repayment obligations established by the ACA, they must be dismissed.  Congress created medical loss ratio and repayment requirements for health insurance issuers when it passed the Patient Protection and Affordable Care Act, Pub.L. No. 111–148, 124 Stat. 119 (2010), *amended by* Health Care and Education Reconciliation Act of 2010, Pub.L. No. 111–152, 124 Stat. 1029 (2010) (collectively the "ACA").  Effective January 1, 2011, The ACA requires health insurance issuers in the individual and small group markets to spend at least 80 percent of the premiums they receive on health care services and activities to improve health care quality.[69]  For health insurance issuers in the large group market, this amount is 85 percent.[70]  The ratio establishing this percentage is known as a "medical loss ratio."[71]  When a health insurance issuer's medical loss ratio falls below the required amount, the health insurance issuer must provide a rebate to the participant.[72]

**2. To the Extent MSC's Claim is Based on the Medical Loss Ratio and Repayment Obligations Established By the ACA, It Must Be Dismissed.**

The Court should reject MSC's attempt to backdoor a claim for an alleged violation of the medical loss ratio and repayment requirements through ERISA because Congress did not create a private right of action in the ACA to enforce those requirements.  Indeed, it is beyond

[69] *See* 42 U.S.C. § 300gg-18(a); 45 C.F.R. 158.251.
[70] *Id.*; 45 C.F.R. 158.251.
[71] *See* 45 C.F.R. § 158.101(b).
[72] *See* 42 U.S.C. § 300gg-18(b).

18

dispute that Congress did not create an express private right of action to enforce the medical loss ratio and repayment requirements.[73]   Instead Congress provided for enforcement of these requirements by the Secretary of Health and Human Services ("HHS") only.[74]

Congress's unambiguous decision to give the Secretary of HHS exclusive enforcement authority over the medical loss ratio and repayment requirements is fatal to MSC's attempt to hold NIA accountable for allegedly violating those requirements.  Because 42 U.S.C. § 300gg-18 does not provide "an express private right of action[,] the burden rests with Plaintiff[] to establish that an implied private right of action exists."[75]   That burden is especially heavy in this case given that Congress gave exclusive enforcement authority to the Secretary of HHS.  "Where, as here, [the] statute provides administrative remedies, there is a presumption that Congress did not intend to create a private right of action, but rather provided precisely the remedies it considered appropriate."[76]   The Court should decline MSC's invitation to reconsider Congress's decision. To begin with, ERISA provides that it shall not "alter, amend, modify . . . or supersede any law of the United States.[77]   Under these circumstances, permitting a claim based upon alleged violations of the ACA to proceed under ERISA would violate that prohibition by implying a cause of action the Congress did not authorize.

3.  **NIA Is Not a "Health Insurance Issuer" to Which the Medical Loss Ratio Obligations Apply.**

Even if the Court concludes that Congress provided a private action to enforce the

---

[73] *See id.*
[74] *See* 42 U.S.C. § 300gg-18(b)(3).
[75] *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir. 2002).
[76] *Id.* at 1222–23 (citing *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 19–20, 100 S. Ct. 242, 247–48 (1979) (explaining that when a statute expressly provides for a particular means of enforcement, courts should be cautious in reading additional enforcement mechanisms into the statute)).
[77] 29 U.S.C. § 1144(d).

medical loss ratio obligations, NIA could not be held liable for any alleged violation of those requirements because only health insurance issuers are subject to the medical loss ratio and repayment requirements.[78] The term "health insurance issuer" means "an insurance company, insurance service, or insurance organization (including a health maintenance organization, . . . which is licensed to engage in the business of insurance in a State and which is subject to State law which regulates insurance (within the meaning of [ERISA].)"[79]  Although NIA administers claims on behalf of health insurance issuers, MSC does not (and could not) allege that NIA issued any insurance with respect to MSC, let alone that NIA is a "health insurance issuer" within the meaning of the statute.   Thus NIA is not subject to the medical loss ratio and repayment requirements as a matter of law.

**CONCLUSION**

For the reasons set forth above, NIA respectfully requests that the Court dismiss or stay MSC's Complaint as against NIA and compel arbitration of MSC's claims, or in the alternative, dismiss the Complaint for improper venue or failure to state a claim.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

_s/_ Mitchell W. Berger
Mitchell W. Berger

---

[78] _See_ 42 U.S.C. § 300gg-18.
[79] 42 U.S.C. § 300gg-91(b)(2)

20

Respectfully submitted this 28th day of February, 2013.


_s/_ Mitchell W. Berger
Mitchell W. Berger
Florida Bar No. 0311340

BERGER SINGERMAN LLP
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301
(954) 627-9900
(954) 523-2872 (facsimile)

James W. Boswell
Georgia Bar No. 069838
(Pro Hac Vice admission pending)
David Tetrick, Jr.
Florida Bar No. 097500

KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia  30309-3531
(404) 572-4600
(404) 572-5139 (facsimile)
jboswell@kslaw.com
dtetrick@kslaw.com

**Attorneys for National Imaging
Associates, Inc.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2013, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF which will automatically send e-mail

notification of such filing to the following attorneys of record:

*s/* Mitchell W. Berger
Mitchell W. Berger

**Edward H. Zebersky, Esq.**
ZEBERSKY PAYNE LLP
11 0 SE 6th Street
Fort Lauderdale, FL 33301
Tel: 954-989-6333
ezebersky@zpllp.com
lcruz@zpllp.com
ndiaz@zpllp.com
*Attorneys for Plaintiff*

**Jeffrey M. Liggio, Esq.**
LIGGIO BENRUBI
1615 Forum Place, Suite 3-B
West Palm Beach, FL 33401
Tel: 561-616-3333
jliggio@liggiolaw.com
creyes@liggiolaw.com
KHarmon@liggiolaw.com
ncuevas@liggiolaw.com
yvega@liggiolaw.com
*Attorneys for Plaintiff*

**Theresa M. B. Van Vliet, Esq.**
GENOVESE JOBLOVE & BATTISTA, P.A.
200 East Broward Boulevard, Suite 1110
Fort Lauderdale, Florida 33301
Tel: 954-453-8000
tvanvliet@db-law.com
cbucolo@gjb-law.com
kcabrera@gjb-law.com
sgrant@gjb-law.com
vlambdin@gjb-law.com
*Attorneys for Defendant MedSolutions, Inc.*

**Nina Greene, Esq.**
GENOVESE JOBLOVE & BATTISTA, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Tel: 305-349-2300
ngreene@gjb-law.com
*Attorneys for Defendant MedSolutions, Inc.*

**Shari Gerson, Esq.**
GRAY ROBINSON, P.A.
401 East Las Olas Boulevard, Suite 1850
Fort Lauderdale, Florida 33301
Tel: 954-761-8111
Shari.Gerson@gray-robinson.com
gale.myerowitz@gray-robinson.com
*Attorneys for Cigna Corporation and Connecticut General Life Insurance Company*

**Joshua B. Simon, Esq.**
**Katherine L. McDaniel, Esq.**
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, New York 10022
Tele: 212-446-4800
joshua.simon@kirkland.com
kmcdaniel@kirkland.com
*Attorneys for Cigna Corporation and Connecticut General Life Insurance Company*

**Grant S. Cowan, Esq.**
Frost Brown Todd, LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, 0H 45202
Telephone: (513) 651-6745
Facsimile: (513) 651-6981
gcowan@fbtlaw.com
*Attorneys for Defendant MedSolutions, Inc.*

4839069-1