UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60051-CIV-DIMITROULEAS/SNOW

MRI SCAN CENTER, LLC f/k/a MRI Scan
Center Inc. individually and on behalf of all
others similarly situated,

    Plaintiff,

vs.

NATIONAL IMAGING ASSOCIATES, INC.,
MEDSOLUTIONS, INC., CIGNA
CORPORATION, and CONNECTICUT
GENERAL LIFE INSURANCE COMPANY,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE is before the Court on Defendants' Motions to Dismiss (the "Motions") [DE 26, 27, 29]. The Court has carefully considered the Motions [DE 26, 27, 29], Plaintiff's Responses in Opposition to the Motions [DE 44, 45], and Defendants' Replies [DE 48, 49]. The Court is otherwise fully advised in the premises.

### I. BACKGROUND

The parties to this action are Plaintiff MRI Scan Center, LLC ("MSC" or "Plaintiff"), Defendant National Imaging Associates, Inc. ("National Imaging"), Defendant MedSolutions, Inc. ("MedSolutions"), Defendant Cigna Corporation, and Defendant Connecticut General Life Insurance Company (together with Cigna Corporation, "Cigna," and together with National Imaging, MedSolutions, and Cigna Corporation, "Defendants"). Each of the parties is involved with the provision of health care and/or health care insurance coverage. Cigna offers commercial

health care plans through which it reimburses participants and beneficiaries for services covered under the plans. Plaintiff provides imaging services to individuals insured by Cigna. When Plaintiff provides those services, the patients, through written assignments, agree that Plaintiff may bill and receive payments from Cigna. Plaintiff then bills Cigna for those services. The patient remains responsible for any costs the insurance does not cover.

Cigna, in turn, has employed National Imaging and MedSolutions as third-party administrators to process any claims submitted by Plaintiff. Cigna, therefore, requires Plaintiff to contract with, and submit claims to, these third-party administrators. National Imaging and MedSolutions process those claims on Cigna's behalf. In so doing, National Imaging and MedSolutions either pay Plaintiff directly or submit the claims to Cigna for payment.

After Plaintiff services a patient insured by Cigna, Cigna issues an Explanation of Benefits ("EOB") to that patient. The EOB provides the patient with information on the services performed, the amount Plaintiff billed for those services, the amount that the insurance plan allows Plaintiff to bill for those services (the "allowed amount"), the amount paid by the insurer to Plaintiff, and the amount of deductible or copayment the patient must pay. National Imaging or MedSolutions, acting as a third-party administrator, issues a separate but similar document, the Explanation of Payment ("EOP"), directly to Plaintiff.

Plaintiff alleges that various EOBs are inconsistent with their respective EOPs. On the EOBs–which Cigna sends directly to the patients/insured–the total allowed amounts are inflated to include administrative costs paid by Cigna to MedSolutions or National Imaging. For example, one EOP reflected that Cigna was allowing a payment of $325 for a particular service performed by Plaintiff. However, the counterpart EOB, as sent to the patient, reflected that

Cigna was allowing a payment of $473 for that service.  The extra $148 was actually an administrative cost that Cigna owed to National Imaging.  Plaintiff alleges that Cigna repeatedly engages in this practice with both MedSolutions and National Imaging.  According to Plaintiff, these misrepresentations allow Cigna to inflate its Medical Loss Ratio ("MLR").  The inflated MLR then allows CIGNA to charge higher premiums pursuant to applicable federal and state law.

Based on these misrepresentations, Plaintiff initiated this action on January 19, 2013, making claims for equitable relief under the Employee Retirement Income Security Act of 1974 ("ERISA").  Defendants filed their respective Motions [DE 26, 27, 29] on February 28, 2013, seeking dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure (the "Rules"), improper venue under Rule 12(b)(3), and failure to state claim under Rule 12(b)(6).  The Court held oral argument on April 12, 2013 [DE 53, 54].

## II.  STANDARDS OF REVIEW

A.   Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)

### 1.   *Compelling Arbitration*

Pursuant to the Federal Arbitration Act (the "FAA"), "[t]he role of the courts is to rigorously enforce agreements to arbitrate." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (internal quotations omitted)).  Accordingly, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9

U.S.C. §§ 2-4).  Moreover, courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *See, e.g., Shea v. BBVA Compass Bancshares, Inc.*, No. 12-23324, 2013 WL 869526, at *2 n.3 (S.D. Fla. Mar. 7, 2013).

### 2.  *Lack of Standing*

"Federal Courts cannot exercise jurisdiction over cases where the parties lack standing." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011).  If a plaintiff does not have standing, "the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction." *Id.*  "The party invoking federal jurisdiction bears the burden of establishing" standing.  *Lujan v. Defenders of Wildlilfe*, 504 U.S. 555, 561 (1992).  "When addressing a motion to dismiss for lack of standing, the court evaluates standing based on the facts of the complaint.  However, the court 'may not speculate concerning the existence of standing or piece together support for the plaintiff.'" *Correa v. BAC Home Loans Servicing LP*, 853 F. Supp. 2d 1203, 1207 (M.D. Fla. 2012) (quoting *Lujan*, 504 U.S. at 560-61).

### B.  Failure to State a Claim Under Rule 12(b)(6)

When a defendant files a motion to dismiss for failure to state a claim, all of the complaint's plausible, nonconclusory allegations are taken as true.  *Aschroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court makes all reasonable inferences from factual allegations in the plaintiff's favor. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194,

4

1198 n.2 (11th Cir. 2001). Together, the pled facts and the reasonable inferences they support must give rise to a plausible claim. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. DISCUSSION

A.  **National Imaging's Motion to Dismiss**

National Imaging moves to compel arbitration or, in the alternative, dismiss Plaintiff's claims for improper venue or failure to state a claim. Because the Court will compel arbitration, it need not consider National Imaging's alternative arguments.

National Imaging argues that the Court should dismiss the claims and compel arbitration pursuant to an arbitration clause in a contract between National Imaging and Plaintiff. The contract (the "Imaging Facility Agreement") provides, in relevant part, as follows:

> (a)   The Parties agree to use good faith efforts to resolve all disputes arising out of or relating to this Agreement within sixty (60) days of written notice that such a dispute exists.
> . . .
>
> (b)   If the dispute has not been resolved within such sixty (60) day period and it involves an amount in controversy that is equal to or less than five hundred thousand dollars ($500,000.00), then the sole remedy of the party initiating the dispute shall be submission of the dispute to binding arbitration . . . ."

*See* [DE 29-1 at 17-18]. National Imaging asserts that this dispute "relates" to the Imaging Facility Agreement, as provided for in the arbitration provision. National Imaging further asserts–and Plaintiff concedes[1]–that the amount in controversy is below $500,000. Accordingly,

---

[1] Plaintiff stated at oral argument that it was not asserting that the amount in controversy exceeded $500,000. Plaintiff, however, does argue in its response that the arbitration clause's precondition is not met because the equitable relief sought is not an "amount of controversy." That argument fails. Injunctive or declaratory relief

5

National Imaging argues that the Court should compel Plaintiff to pursue its claim through arbitration.

In response, Plaintiff argues that its claims do not arise from or relate to the Imaging Facility Agreement.  According to Plaintiff, National Imaging's ERISA violations arise from National Imaging's relationship with Cigna and not from the Imaging Facility Agreement.  Plaintiff does not allege that National Imaging breached the Imaging Facility Agreement.  And Plaintiff maintains that its claims would persist regardless of whether National Imaging completely performed under that agreement or, in the alternative, never entered into that agreement.  Finally, Plaintiff asserts that ERISA and the federal common law preclude enforcement of the arbitration clause because that clause interferes with Plaintiff's rights under ERISA.

The Court agrees with National Imaging that Plaintiff's claims should be submitted to arbitration.  The FAA–which governs the validity of an arbitration agreement–"evinces 'the strong federal policy in favor of enforcing arbitration agreements.'" *Perera v. H & R Block E. Enters., Inc.*, 2012 WL 5471942, at *2 (S.D. Fla. Nov. 9, 2012) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).  As already stated, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert*, 544 F.3d at 1195 (citing 9 U.S.C. §§ 2-4).

---

can be valued for amount in controversy purposes.  *See Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002).  Therefore, there is an amount in controversy.  Although that amount has not been quantified, Plaintiff has conceded that it does not exceed $500,000.

With respect to the first prong, Plaintiff argues that the arbitration clause is unenforceable because ERISA regulations prohibit such mandatory clauses and because federal common law precludes enforcement of clauses that interfere with a substantive federal statutory right. Plaintiff focuses on 29 C.F.R. § 2560.503-1, which addresses the circumstances in which certain health plans may include mandatory arbitration clauses.

Plaintiff's arguments are unpersuasive. 29 C.F.R. § 2560.503-1 applies to employee benefit plan procedures for claims submitted by participants and beneficiaries. The Imaging Facility Agreement, however, exists between National Imaging and Plaintiff, a health care provider. That agreement does not involve health plan participants and/or beneficiaries. Nor does it require any health plan participants or beneficiaries to arbitrate disputes over claims.

Moreover, federal common law does not preclude enforcement of the arbitration clause. There is no indication that Plaintiff has a statutory right that is incapable of vindication through arbitration. *See, e.g.*, *Parisi v. Goldman, Sachs & Co.*, 710 F.3d 483, 486-87 (2d Cir. 2013) ("[E]ven claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." (internal quotations omitted)). Thus, the Court finds that the arbitration agreement is enforceable.

The next issue is whether Plaintiff's claims fall within the scope of the arbitration clause. The Eleventh Circuit has determined that a particular dispute is "related to" or "arises out of" a contract if the "breach in question was an immediate, foreseeable result of the performance of contractual duties." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th

Cir. 2001). "Disputes that are not related-with at least some directness-to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Id.* However, disputes do "arise out of or relate to the contract in question" when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Id.*

Applying these standards, the Court finds that the instant dispute relates to and/or arises out of the Imaging Facility Agreement. Plaintiff's allegations include very limited conduct by National Imaging, and the entirety of that conduct involves performance of duties required by the Imaging Facility Agreement. Specifically, the only conduct allegedly undertaken by National Imaging was its issuance of EOPs. The purported ERISA violations stem from a comparison of those EOPs to the EOBs issued by Cigna. Accordingly, the EOPs issued by National Imaging are an integral aspect of this dispute.[2] And the Imaging Facility Agreement required National Imaging to issue those EOPs. Thus, the dispute–as alleged by Plaintiff–has occurred as a fairly direct result of National Imaging's performance of its contractual duty to issue EOPs.

The Eleventh Circuit cases relied upon by Plaintiff are easily distinguished. In *Telecom Italia, SpA*, WTC brought a claim against TMI for tortious interference with a contract between WTC and a third party. 248 F.3d at 1111-12. TMI had a lease with WTC and sought to compel arbitration based on an arbitration clause in that lease. The Eleventh Circuit held that the tortious interference claim did not arise out of or relate to the lease. *Id.* at 1114-17. The court noted that there was no claim that TMI's performance under the lease "was designed to, expected to, or likely to" the tortious interference with WTC's contract with the third party. *Id.* at 1116. In the

---

[2] The issuance of EOPs is National Imaging's *only* conduct. If that conduct is not an integral part of this dispute, then National Imaging has no place as a defendant in this action.

instant case, however, National Imaging's performance under the Imaging Facility Agreement was likely to cause the purported ERISA violations. Indeed, Plaintiff has alleged only one relevant activity by National Imaging: the issuance of EOPs. That activity is a necessary part of National Imaging's performance under the Imaging Facility Agreement, and that activity is the only conduct that could give rise to the alleged ERISA violations.

In *Hemispherx Biopharma, Inc.*, Hemispherx brought Exchange Act and common law fraud claims against several defendants based on an attempted hostile takeover of Hemispherx. 553 F.3d at 1353. Hemispherx had entered into a licensing agreement–which included an arbitration clause– allowing one of the defendant entities to develop, manufacture, use, and sell certain products in non-U.S. territories. *Id.* at 1353-54. Eight years later, Hemispherx and that defendant engaged in preliminary discussions about a possible merger. *Id.* at 1355-57. Hemispherx then conducted due diligence, which revealed that the defendant and related entities had made various false representations and were planning a hostile takeover of Hemispherx. *Id.* Hemispherx then filed its lawsuit based on those false representations, and one of the defendants sought to compel arbitration based on the licensing agreement's arbitration clause.

In determining whether to compel arbitration, the Eleventh Circuit considered "whether the present dispute was a foreseeable result of the performance of the licensing agreement." *Id.* at 1367. The court held that "it was not foreseeable at the time of the licensing agreement that the South African defendants would, some eight years later, make misrepresentations to Hemispherx in the course of discussing an equity investment . . . because the investment was not contemplated by that agreement." *Id.* at 1368. In the instant case, the conduct giving rise to the ERISA claim–National Imaging's issuance of EOPs–was contemplated by the Imaging Facility

9

Agreement. That agreement required the EOPs. Therefore, it was foreseeable that an ERISA dispute about EOPs may arise from an agreement requiring those EOPs.

Finally, the decision in *Gedimex, S.A.* does not support Plaintiff's position. In that case, the parties had entered into a series of rice contracts–each with arbitration clauses–and a subsequent bag contract without an arbitration clause. *Gedimex S.A. v. Nidera, Inc.*, 290 F.3d 311, 312 (11th Cir. 2008). A dispute arose regarding performance under the bag contract. *Id.* The Eleventh Circuit held that "[t]he dispute [the defendant] seeks to arbitrate is not a fairly direct result of the performance of any of the duties set forth in the rice purchase contracts." *Id.* at 312 (internal quotations omitted). The current dispute, however, is a direct result of National Imaging's performance of a duty set forth in the Imaging Facility Agreement. Plaintiff, nonetheless, asserts that this dispute arises from the health care contracts between Plaintiff's patients and Cigna and not from the Imaging Facility Agreement.. If that is the case, then National Imaging–which is not a party to those health care contracts–has no role in this action.

Thus, the Court holds that Plaintiff's claims against National Imaging should be submitted to arbitration. However, rather than dismiss the action as to National Imaging, the Court finds that a stay is appropriate. *See* 9 U.S.C. § 3; *Shea*, 2013 WL 869526, at *6 n.13.

**B.**     **CIGNA and MedSolutions's Motions to Dismiss**

Cigna and MedSolutions move to dismiss Plaintiff's claims for lack of subject-matter jurisdiction based on a lack of standing and for failure to state a claim. The Court will consider each argument in turn.

1.  *Lack of Subject-Matter Jurisdiction Under Rule 12(b)(1)*

Cigna and MedSolutions argue that Plaintiff does not have standing for three main reasons.  First, Plaintiff does not have standing to bring this action on its own behalf because it is not a beneficiary under the relevant insurance plans and has not alleged any direct injury to itself.  Second, Plaintiff does not have standing as an assignee of its patients because the purported assignments are not broad enough to encompass the specific claims at issue.  Third, even if it had been assigned the current claims, Plaintiff has not alleged injury to its patients.

In response, Plaintiff asserts that it is a beneficiary and, therefore, has standing to bring its claims.  Plaintiff further asserts that the failure by Defendants to carry out legal duties required by ERISA, without more, constitutes an injury that confers Article III standing to Plaintiff and its patients.  With respect to assignment, Plaintiff argues that the assignment it received legally encompasses the current claims.

The Court holds that Plaintiff has neither established that it is a beneficiary with direct standing or that it received an assignment broad enough to encompass the instant claims.  Because the Court will dismiss on those grounds, it will not address the arguments regarding injury.

ERISA claims "may be brought 'by a participant or beneficiary.'"  *Borrero v. United Healthcare of New York, Inc.*, 610 F.3d 1296, 1301 (11th Cir. 2010) (quoting 29 U.S.C. § 1132(a)(1)).  "Healthcare providers generally are not considered 'beneficiaries' or 'participants' under ERISA and thus lack standing to sue under the statute."  *Id.* at 1301-02; *see also Nat'l Med. Care, Inc. v. United Health Care of Fla., Inc.*, No. 00-8160, 2001 WL 268205, at *2 (S.D. Fla. Jan. 26, 2001) (holding that a provider of medical services is not a "beneficiary" even if a

plan participant authorizes the plan to make payments directly to that provider or assigns that provider the right to recover payments for the medical services). As such, "[h]ealthcare providers may have standing under ERISA only when they derivatively assert rights of their patients as beneficiaries of an ERISA plan. To sue derivatively, the provider must have obtained a written assignment of claims from a patient with standing to sue under ERISA." *Borrero*, 610 F.3d at 1302.

Plaintiff is a provider of health care services and, therefore, is not a beneficiary or participant. *See* [DE 1 at 3-4]. Accordingly, Plaintiff has standing to bring ERISA claims only if it received from its patients assignments broad enough to cover Plaintiff's claims. With respect to the assignments, Plaintiff's complaint includes the following assertions:

> As a matter of course, MSC has its patients execute written assignments in which they agree that MSC may bill and receive payments directly from the patient's insurance, and that the patient remains responsible for any medical costs insurance does not cover. MSC has executed assignments from each of the specific patients refered [sic] to herein. These assignments give MSC standing to pursue ERISA claims on those patients' behalf.

[DE 1 at 3-4].

This assignment does not encompass Plaintiff's claims. An assignment of the right to direct payment of benefits will not assign patients'/assignors' right to bring causes of action under other ERISA provisions that are not related to the reimbursement of benefits. *Sanctuary Surgical Centre, Inc. v. UnitedHealthcare, Inc.*, 10-81589, 2011 WL 6935289, at *8-*9 (S.D. Fla. Jan. 14, 2013) (holding that plaintiff did not have standing to seek ERISA relief–other than for unpaid benefits–where "the complaint . . . alleges only that the patient participants or beneficiary assigned the right to direct

12

payment for unpaid charges to the plaintiffs, and does not allege that the patients assigned all rights under their plans"). Because the assignments–as referenced in Plaintiff's complaint–are limited to "bill[ing] and receiv[ing] pyaments," Plaintiff has not derivatively received standing to sue for equitable relief under 29 U.S.C. § 1132(a)(3).

Thus, the Court will dismiss this action as to Cigna and MedSolutions for lack of subject-matter jurisdiction because Plaintiff does not have standing.

### 2.     *Failure to State a Claim Under Rule 12(b)(6)*

In addition to its lack of standing argument, Cigna and MedSolutions argue that Plaintiff has not exhausted administrative remedies before filing this action, as required under ERISA. The Court agrees. Accordingly, even if Plaintiff did have standing–and the Court had subject-matter jurisdiction–the action would be dismissed for failure to state a claim upon which relief can be granted.[3]

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. Am. General Life and Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997). District courts may excuse this requirement if "resort to administrative remedies would be futile or the remedy inadequate or where a claimant is denied meaningful access to the administrative review scheme in place." *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1316 (11th Cir. 2000) (internal quotations and citations omitted). However,

---

[3] Cigna and MedSolutions make additional arguments that the Court need not consider. First, they argue that Plaintiff has failed to state a claim for restitution because neither Cigna nor MedSolutions has possessed the sought-after funds. Second, Cigna argues that Plaintiff has failed to state a claim because there are no factual allegations demonstrating the actual falsity of Cigna's EOBs. Third, MedSolutions argues that there are no allegations that it–separate from the other Defendants–participated in the false reporting scheme. The Court will not consider these arguments because, as described herein, the Court lacks subject-matter jurisdiction and, in any case, Plaintiff has failed to exhaust its administrative remedies.

13

courts should "apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances." *Id.* at 1318; *see also In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1331 (S.D. Fla. 2002).

Plaintiff effectively acknowledges that the administrative remedies were not utilized and argues only that the exceptions apply. In support, Plaintiff focuses on allegations that "Defendants have failed to provide 'adequate notice in writing' to plan participants and beneficiaries whose claims for benefits have been denied or reduced and 'a reasonable opportunity' for a 'full and fair review' of the decisions denying or reducing such claims." [DE 44 at 17]. Based on those allegations, Plaintiff concludes that Defendants "denied 'meaningful access' to the administrative review scheme in place." *Id.*

The Court is not convinced. Plaintiff's complaint does not include a description of Cigna's administrative review scheme. Nor does the complaint describe why, in this context, resort to that scheme would be futile, the remedies would be inadequate, or access to the scheme is unavailable. Indeed, to establish that it was denied meaningful access to the administrative review scheme, Plaintiff would need to allege that it requested but was denied copies of the health plan documents outlining that scheme and describing the available remedies. *See Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846-47 (11th Cir. 1990) ("Until [the plaintiff] could obtain plan documents describing what remedies the plan made available and documenting the reasons that his claim had been denied, he was refused meaningful access to those procedures."). Plaintiff has not made such an allegation. It is, therefore, unclear whether Plaintiff or its patients could submit allegedly inaccurate EOBs to Cigna, requesting review and/or correction. It is equally unclear how Cigna would process such submissions or whether

Cigna would provide corrected EOBs to the patients.[4]  Having failed to plead any of these facts, Plaintiff has neither satisfied the exhaustion requirement nor established that an exception applies.  Consequently, if the Court had subject-matter jurisdiction, dismissal pursuant to Rule 12(b)(6) would, nonetheless, be appropriate.

### IV.  <u>CONCLUSION</u>

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Cigna's Motion [DE 26] and MedSolutions's Motion [DE 27] are **GRANTED**;

2. Cigna and MedSolutions are **DISMISSED WITH PREJUDICE;**

3. National Imaging's Motion [DE 29] is **GRANTED IN PART**;

4. The Court **COMPELS** arbitration at to Plaintiff's claims against National Imaging but shall **STAY** the case with respect to National Imaging;

5. Every sixty (60) days from the date of this Order, Plaintiff shall file a status report on the arbitration.  Failure to file a timely status report may result in the immediate dismissal of this action; and

6. The Clerk shall administratively **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this 6th day of May, 2013.

WILLIAM P. DIMITROULEAS
United States District Judge

---

[4] These deficiencies apply with equal force to MedSolutions. Plaintiff has not pled factual allegations with respect to MedSolutions's administrative review scheme, whether resort to that scheme would be futile, and/or whether Plaintiff has been denied access to that scheme.

15

Copies furnished to:

Counsel of record